Agnes E. STEVENS, Plaintiff,

v.

The JUNIOR COLLEGE DISTRICT OF ST. LOUIS, ST. LOUIS COUNTY, MISSOURI, Defendant.

No. 75–151C(4).

United States District Court, E. D. Missouri, E. D.

March 24, 1976.

Susan Spiegel, Mid-America Employment Rights Project, Francis L. Ruppert, ACLU, St. Louis, Mo., for plaintiff.

John P. Emde, Thomas E. Wack and Edwin S. Fryer, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff Agnes E. Stevens brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983, alleging discrimination on the basis of race and additionally, retaliatory conduct on the part of defendant, The Junior College District of St. Louis [hereinafter, "JCD"] for the filing of complaints of discrimination.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. Plaintiff Agnes E. Stevens is a black female resident of the State of Missouri and was during all times relevant herein a citizen of the United States. Defendant, The Junior College District of St. Louis, is a body corporate and a subdivision of the State of Missouri existing pursuant to law. Defendant maintains its "District Office" within the City of St. Louis, Missouri and in addition thereto, operates three constituent college campuses within the City of St. Louis and St. Louis County.

2. Plaintiff was first employed by defendant on or about January 16, 1969 as an Accounting Clerk II in the Payroll Section of the Finance Department in defendant's District Office which, at that time, was located in Clayton, Missouri. For reasons not relevant herein, plaintiff was reassigned in May, 1970 to the Employee Benefits Desk where she worked until April 3, 1972 when she was transferred to the Finance Department's Accounts Payable Section. On August 23, 1972, plaintiff was discharged.

3. The classified employees of the JCD are categorized so that all persons employed within a given job classification are assigned to a salary range. All Accounting Clerk I positions are within salary range 5 and all Accounting Clerk II positions are within salary range 7. Within both range 5 and 7, there are eight salary steps.

4. When plaintiff was assigned to the Employee Benefits Desk, she was an Accounting Clerk II. When she was transferred to the Finance Department's Accounts Payable Section, she was classified as an Accounting Clerk I. Plaintiff's salary after reclassification was exactly the same as it was before the reclassification. Her opportunities for future salary increases, however, were now more limited as an Accounting Clerk I.

5. While assigned to the Employee Benefits Desk, plaintiff's duties consisted of withholding sums from other employees' payroll checks for insurance premium purposes, and remitting such premiums to the insurance carriers. After plaintiff left this Desk, she was replaced by two women, Barbara Lewis, a black woman who worked part-time and Shirley Toretta, a white woman who worked full-time.

6. Plaintiff's transfer to the Accounts Payable Section was the result of a decision made by Arnold Snyder, who is black, and who was plaintiff's supervisor. In a meeting held on April 25, 1972 with plaintiff, Mr. Snyder, and Mary Jane Calais, Vice President for Financial Affairs, present, the reasons for plaintiff's reassignment were discussed. Three considerations were given: (1) offensive personal habits; (2) complaints about plaintiff's work; (3) conducting outside business on JCD time. In regard to the complaints about plaintiff's work, the focus was basically that plaintiff was making a considerable number of errors which were serious in nature. The evi-

dence does not indicate that the reason that plaintiff was reassigned was that she was unable to keep up with the amount of work required but that the work which she was able to complete contained serious errors. It was approximately six months before the replacement employees were able to correct plaintiff's errors. There is absolutely no evidence that the reason for this transfer was in whole or in part racial in nature.

7. At the time of the meeting concerning plaintiff's reassignment, Ms. Calais stated that she was sorry that plaintiff felt "she had to go outside the District with this problem; that all avenues in the District should have been tried". Mr. Snyder thought that the reference was to a letter plaintiff had written to Missouri State Congressman Aikins and did not know of any charges filed with the Equal Employment Opportunity Commission at that time. In fact, plaintiff had filed charges on April 18, 1972.

8. On August 23, 1972, plaintiff was discharged. The reason given for the discharge was "INABILITY TO PERFORM THE DUTIES OF THE JOB ASSIGNED". Mr. Snyder testified that this was one of several reasons for her discharge. Other reasons included the frequent use of profane language and offensive personal habits. Mr. Snyder, however, knew that plaintiff would be seeking other employment and he did not want to hurt or hinder her ability to find other employment. For that reason, he listed only the fact that she was unable to perform the duties of the job. At the time of termination, Mr. Snyder was aware of the fact that plaintiff had filed charges with the Equal Employment Opportunity Commission; however, the credible evidence establishes that Mr. Snyder did not discharge plaintiff, either in whole or in part, in retaliation for the filing of those charges. Nor did racial considerations enter into the decision to discharge plaintiff. The testimony of Mr. Snyder and others amply supports the conclusion that plaintiff's use of profane language and her personal habits were offensive and troublesome to co-workers. It has been inferred that the habits complained of were simply part of plaintiff's personality. Nonetheless the Court finds that the habits could easily be found offensive.

9. Plaintiff submitted evidence concerning two white women who allegedly engaged in conduct similar to that of plaintiff and yet were not discharged. One woman engaged in excessive talking, loitering and extended lunch hours. The other woman refused on one date to carry out work assigned to her. The Court is of the opinion that such evidence is of little value since the circumstances surrounding the disciplinary measures taken in each case were not sufficiently established so as to permit the Court to draw a meaningful conclusion therefrom. From the evidence which was adduced, it would appear that plaintiff's conduct and job performance caused more extensive problems over a longer period of time.

10. Plaintiff filed an additional charge with the Equal Employment Opportunity Commission on March 27, 1973. This suit was filed within ninety days of receipt of the Notice of Right to Sue.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter and of the parties to this action in accordance with 42 U.S.C. § 2000e–5(f)(3). In view of the conclusions of the Court herein, it is not necessary to determine whether jurisdiction exists pursuant to 42 U.S.C. §§ 1981 and 1983.

The Court has found that plaintiff was transferred solely because of her poor performance, use of profane language, and offensive personal habits. The Court has further found that these same considerations were the sole reasons for her discharge. Plaintiff was not discriminated against on account of her race, nor in retaliation for the filing of charges with the Equal Employment Opportunity Commission. Therefore, Title VII has not been violated. *Christian v. General Motors Corporation*, 341 F.Supp.

1207 (E.D.Mo.1972), *aff'd*, 475 F.2d 1407 (8th Cir. 1973).

Having failed to prove her claim of employment discrimination, the Court will give judgment to defendant at plaintiff's costs.