Willie McCAMPBELL, Plaintiff,

v.

CHRYSLER CORPORATION, Defendant.

Civ. A. No. 75–70730.

United States District Court,
E. D. Michigan, S. D.

Jan. 26, 1977.

Ovander W. Stoner, Jr., Detroit, Mich., for plaintiff.

Thomas G. Kienbaum, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES

CORNELIA G. KENNEDY, District Judge.

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and § 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging that he had been fired from his job with Chrysler Corporation because of his race. The case proceeded to trial, and at the close of the plaintiff's case the court granted defendant's Rule 41(b) motion to dismiss and entered judgment in

favor of the defendant. Thereafter, the defendant filed this motion for attorney's fees.

An express provision for the award of attorney's fees to the prevailing party is found in § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k). In interpreting Title VII's attorney's fees provision, courts have held that the "prevailing party" may be either plaintiff or defendant and have allowed both successful defendants and successful plaintiffs to recover such fees in appropriate cases. The difficulty is in determining what is an appropriate case.

█ The statute provides that the court may award attorney's fees "in its discretion," *id.,* thus making it clear that it is an equitable decision to be made by the judge after considering the stated purpose of the legislation as well as the facts of the particular case. In this regard, the Title VII attorney's fees provision is similar to those contained in other civil rights legislation. *See, e. g.,* Civil Rights Act of 1964, Title II, § 204(b), 42 U.S.C. § 2000a–3(b); Fair Housing Act of 1968, § 812(c), 42 U.S.C. § 3612(c). In interpreting the attorney's fees provisions of Title II of the Civil Rights Act of 1964, the Supreme Court held that in the absence of exceptional circumstances a prevailing plaintiff should be awarded attorney's fees routinely. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The courts have subsequently extended the rationale of *Newman* and *Northcross v. Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (attorney's fees provision contained in § 718 of Emergency School Aid Act of 1972, 20 U.S.C. § 1617) (hereinafter *Newman-Northcross* rule) to successful Title VII actions. *See, e.g., Albemarle Paper Company v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (indicating *Newman-Northcross* rule should be applied to award of attorney's fees in Title VII cases); *Carrion v. Yeshiva University,* 535 F.2d 722 (2d Cir. 1976). The purpose of making attorney's fees ordinarily available to a successful plaintiff in a civil rights action was

stated by Mr. Justice White in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975):

> "[U]nder some, if not most, of the statutes providing for the allowance of reasonable fees, Congress has opted to rely heavily on private enforcement to implement public policy and to allow counsel fees so as to encourage private litigation." *Id.* at 263, 95 S.Ct. at 1624.

The above rationale does not provide support for the award of attorney's fees to a successful defendant in a Title VII action. The average Title VII plaintiff knows very little other than that he has been fired or not hired, and he has a belief that his misfortune was the product of discrimination. Ordinarily he would rely on the advice of an attorney in determining whether his belief of discrimination was sufficiently well founded to warrant a lawsuit. Furthermore, the information needed to determine whether the discharge or refusal to hire was based on discrimination would often be unavailable to the plaintiff prior to the initiation of a lawsuit. For these reasons, it would be unjust to award attorney's fees to a successful defendant routinely. The desire of Congress to use private actions to help erase discrimination would be impeded; civil rights cases would be brought only in the clearest cases of discrimination or by an indigent, an award against whom would be uncollectable. Advocacy into uncharted areas would be stifled. Thus a much more restrictive standard has evolved for testing whether to award attorney's fees to a successful defendant.

The standard that has evolved is whether the case brought by the plaintiff was unreasonable, frivolous, meritless or vexatious. *See Carrion v. Yeshiva University,* 535 F.2d at 727; *United States Steel Corporation v. United States,* 385 F.Supp. 346 (W.D.Pa. 1974), *aff'd,* 519 F.2d 359 (3d Cir. 1975). This standard, as well as the admittedly easier standard for successful plaintiffs, was commented upon favorably by the Senate in its report on the Civil Rights Attor-

ney's Fees Awards Act of 1976, Pub.L. No. 94–559 (Oct. 19, 1976), 90 Stat. 2641:

"It is intended that the standards for awarding fees be generally the same as under the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' Such 'private attorneys general' should not be deterred from bringing *good faith actions* to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose. Such a party, if unsuccessful, could be assessed his opponent's fee only where it is shown that his suit was clearly frivolous, vexatious, or brought for harassment purposes. This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in '*bad faith*' . . . ." S.Rep.No.94–1011, 94th Cong., 2d Sess. U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912 (June 29, 1976) (emphasis added, footnotes and citations omitted).

Although the Senate Report was discussing standards for the Civil Rights Attorney's Fees Awards Act, it is clear that the authors of the Report understood that their recommended standard was the one presently applied to cases brought under Title VII and that the Senate approved of the standard.

Just as the Report equated "clearly frivolous, vexatious or brought for harassment purposes" with "bad faith," most reported cases in which attorney's fees have been levied against a plaintiff are ones which the courts found to have been brought in bad faith. *See, e. g., Carrion v. Yeshiva University, supra* (substantially identical issue previously litigated by plaintiff in state courts); *Maldonado v. Yellow Freight System, Inc.,* 10 F.E.P. Cases 1290 (C.D.Cal. 1975) (plaintiff could not satisfy two of the four elements of prima facie case, was unqualified to fill job for which he applied; employer was not hiring anybody at time he applied; action held to be patently ground-

less); *Lundberg v. Delta Airlines Inc.,* 13 F.E.P. Cases 603 (E.D.La.1976) (action could not have been prosecuted in good faith beyond time at which plaintiff was made aware of defenses which clearly disposed of the claim).

In some cases in which attorney's fees were awarded against an unsuccessful plaintiff, the courts have either not articulated the standard upon which they were awarded or even perhaps inferred that the standard would be the same for plaintiff and defendant, *see, e. g., Van Hoomissen v. Xerox Corporation,* 503 F.2d 1131, 1133 (9th Cir. 1974); *Matyi v. Beer Bottlers, etc., Local, etc., 1187,* 392 F.Supp. 60 (E.D.Mo. 1974). In some instances, *e. g., Van Hoomissen v. Xerox, supra,* these awards have been against the EEOC, a fact which would distinguish that case from one, such as this one, where any award would be against an individual plaintiff. Since an award against the EEOC would not have the chilling effect that would result from an award against an individual plaintiff who had pursued, in good faith, a meritless claim, there is a sound basis for such a distinction.

■ There is an absence of controlling Sixth Circuit precedent. However, this court believes that the standard articulated by the Second Circuit in *Carrion v. Yeshiva University, supra,* and endorsed by the Senate in its report on the Civil Rights Attorney's Fees Awards Act of 1976 is the correct one and that it is the one that will be adopted in this Circuit. Therefore, this court holds that to be awarded attorney's fees, a prevailing defendant must show that an individual plaintiff has proceeded in bad faith. Bad faith could be inferred if the claim were shown to have been clearly frivolous, unreasonable, vexatious, or brought for harassment purposes. An examination of the facts in this case fails to demonstrate that plaintiff brought it in bad faith.

■ In support of its position that the action was brought in bad faith, Chrysler Corporation relies on the following factors. First, the complaint falsely stated in paragraph 5 that prior to his discharge on No-

vember 28, 1972, the plaintiff had not been disciplined by the defendant. Second, the plaintiff was reinstated by Chrysler and called back to work on January 7, 1974, with seniority but without backpay after a settlement of his union grievance for his discharge. Chrysler claims the reinstatement was done in complete settlement of any claims plaintiff might have arising out of his November 28, 1972 discharge. The reinstatement was followed by a dismissal of his civil rights claim by the Michigan Civil Rights Commission, which noted the above settlement on its records. Third, the complaint alleged that Chrysler had a pattern or practice of disciplining black employees more severely than whites; this the plaintiff failed to prove. Finally, and independent of this case, the attorney for Chrysler stated in an affidavit that the defendant's attorney had informed him that the plaintiff intends to bring a lawsuit in state court based upon a subsequent discharge (on August 28, 1975) which occurred after his reinstatement under what the defendant alleges to have been substantially identical circumstances.

The allegation in the complaint regarding lack of prior disciplinary actions would be persuasive indicia of bad faith if the complaint had been verified by Mr. McCampbell. It was not. Furthermore, Mr. McCampbell stated in both his deposition (pp. 21–29) and at trial that blacks were disciplined for things which a white employee could do with impunity. His conception of his prior disciplines was that they had been imposed because he was black. One statement from his deposition appears to summarize his opinion of how blacks are treated at Chrysler. The statement was made when he was asked whether he could explain what he meant by pattern or practice of discrimination. He replied: "Yes, because black people continually are being harassed . . . ." Deposition of Willie McCampbell at 22 (Deposition). Plaintiff testified that he felt he had been unfairly disciplined. He should not be penalized for his attorney's incorrect substitute statement that he had not been disciplined.

Lack of proof of pattern or practice also fails to provide a basis for concluding that the plaintiff proceeded in bad faith. It is clear from the examples given in his deposition that Mr. McCampbell believed that blacks as a group were treated more harshly than whites when discipline was meted out. See Deposition at 22–26. His testimony at trial was consistent in this respect. It was on the basis of other conflicting testimony that the court resolved this issue of fact against the plaintiff.

The defendant's third charge, that Mr. McCampbell knew that the reinstatement of January 7, 1974 was in total settlement of his disputed discharge, was previously addressed by this court when it denied the defendant's motion to dismiss or for summary judgment. At that time, the court pointed out that for this to be a good defense against a subsequent Title VII suit the proofs would have to show that plaintiff's acceptance of reinstatement was expressly conditioned on a waiver of his right to pursue further relief and that the waiver was knowing and voluntary. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15, 94 S.Ct. 1011, 39 L.Ed.2d 147. From the testimony and evidence offered at trial, this court concludes that this was not proved and provides no basis for finding that the plaintiff acted in bad faith. The reinstatement was the result of a grievance prosecuted by the union, and acceptance of a grievance settlement does not constitute a waiver of any Title VII rights that an employee may have in the absence of an express condition coupled with a knowing and voluntary waiver. See id. Although there was some evidence from which it could be inferred that plaintiff agreed to the dismissal of his claim before the Michigan Civil Rights Commission in return for his reinstatement, the trial record does not provide a sufficient basis for such a finding.

The last point raised by the defendant is the intent of Mr. McCampbell to litigate the discharge which occurred in August, 1975. It should first be pointed out that the case is not before this court. It is an action of Mr. McCampbell which will supposedly fol-

**1330**

low this action, but it is not for this court to decide its merits. If the action is brought and the facts indicate that it was substantially identical to this action, the state court may determine that a *prior* unsuccessful and substantially similar case indicates bad faith in prosecuting the later case. However, this court believes that even if it were to assume that the 1975 discharge would be litigated and would prove to be based on substantially identical facts, such an event would not prove that the present action was brought in bad faith, when it was brought before that discharge had occurred.

The court finds that the factors upon which the defendant would have it find bad faith do not outweigh other factors indicative of a good faith belief on the part of the plaintiff that he was a victim of racial discrimination. It further finds that the case was not clearly frivolous, unreasonable, vexatious, or brought for harassment purposes. The motion for award of attorney's fees is therefore DENIED.

Costs may be taxed to defendant as the prevailing party.