Agnes E. STEVENS, Appellant,

v.

The JUNIOR COLLEGE DISTRICT OF ST. LOUIS—ST. LOUIS COUNTY, et al., Appellees.

No. 76–1445.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1977.

Decided Feb. 14, 1977.

Susan Spiegel, Mid-American Employment Rights Project, St. Louis, Mo., for appellant; Michael J. Hoare, St. Louis, Mo., and Francis L. Ruppert, American Civil Liberties Union, Clayton Mo., on brief.

Edwin S. Fryer, St. Louis, Mo., for appellee; John P. Emde and Fred Leicht, Jr. of Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., on brief.

Before MATTHES, Senior Circuit Judge, and BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

Agnes E. Stevens filed this action in the district court claiming that she had been demoted and subsequently discharged by The Junior College District of St. Louis, St. Louis County, Missouri (District) on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. §§ 1981 and 1983. The case was tried to the court without a jury. Thereafter, the court, in a detailed opinion, *Stevens v. Junior College Dist. of St. Louis,* 410 F.Supp. 309 (E.D.Mo. 1976), awarded judgment in favor of the District. This appeal by plaintiff followed. We affirm.

The trial consisted of the introduction of a large number of exhibits, most of which were offered by plaintiff, two witnesses for the plaintiff and one for the defendant.[1]

The district court in its opinion made extensive findings of fact, all of which are amply supported by the record. We therefore recite the facts only briefly.

Plaintiff, a black woman, was employed by the District as an Accounting Clerk II in the Employee Benefits Section of the Finance Department from January 16, 1969, until April 3, 1972, when she was demoted to the position of Accounting Clerk I in the Accounts Payable Section of the same department. Plaintiff's transfer and demotion were the result of a decision by her supervisor, Arnold Snyder, who is also a black. Until her demotion, plaintiff was the only employee in the Employee Benefits Section, where she was responsible primarily for withholding sums from payroll checks and remitting premiums to insurance carriers. Plaintiff was replaced by one part-time and one full-time employee. The part-time employee, a black woman, was a professional accountant. The other, a white woman, was classified as Accounting Clerk I. The replacement employees worked for six months to correct errors made by Miss Stevens.

Miss Stevens filed charges with the EEOC on April 18, 1972. On April 25, Miss

---

1. Plaintiff did not take the stand in an effort to establish her claim of discrimination or to contradict or explain the damaging evidence against her.

Stevens met with Snyder and the Vice-President for Financial Affairs, who informed her that there were three reasons for her reassignment: (1) her offensive personal habits; (2) the quality of her work; and (3) her practice of conducting her own real estate business on District time. The Vice-President for Financial Affairs also stated that she was sorry Miss Stevens felt that "she had to go outside the District with this problem, that all avenues in the District should have been tried." Mr. Snyder testified that, in his opinion, the reference was to a letter Miss Stevens had written to Congressman Aikins.

On August 23, 1972, plaintiff was discharged. The incident which immediately precipitated her termination involved a confrontation during which Miss Stevens directed derogatory epithets at Mr. Snyder. The reason given for the discharge was "inability to perform the duties of the job assigned," but Mr. Snyder testified that additional reasons included frequent use of profane language and offensive personal habits. At the time of discharge, Mr. Snyder was aware that plaintiff had filed charges with the EEOC.

Miss Stevens filed an additional charge with the EEOC on March 27, 1973, and within ninety days of receipt of her Notice of Right to Sue initiated this suit in the district court.

The district court concluded that:

[P]laintiff was transferred solely because of her poor performance, use of profane language, and offensive personal habits. The Court has further found that these same considerations were the sole reasons for her discharge. Plaintiff was not discriminated against on account of her race, nor in retaliation for the filing of charges with the Equal Employment Opportunity Commission. Therefore, Title VII has not been violated. *Christian v.*

*General Motors Corporation,* 341 F.Supp. 1207 (E.D.Mo.1972), *aff'd,* 475 F.2d 1407 (8th Cir. 1973).

410 F.Supp. at 311–12.

The foundation for plaintiff's appeal is that the evidence established a prima facie case of discrimination which motivated her so-called demotion and ultimate discharge. She proceeds from that foundation to assert that the District failed to sustain its burden to articulate a legitimate, nondiscriminatory reason for her demotion and discharge, relying upon *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a failure to hire case.[2]

Some doubt has been expressed as to the applicability of *Green* to a discharge case. See *King v. Yellow Freight System, Inc.,* 523 F.2d 879, 882 (8th Cir. 1975). In view of our holding, it is unnecessary to decide this question. The burden is on plaintiff to affirmatively prove racial discrimination, *id.* at 881–82; *Naraine v. Western Electric Co.,* 507 F.2d 590, 593 (8th Cir. 1974); *Christian v. General Motors Corp.,* 341 F.Supp. 1207, 1208 (E.D.Mo.1972), *aff'd,* 475 F.2d 1407 (8th Cir. 1973), and this she has failed to do. We have found no case where the facts even remotely parallel those presented by this record. Here, unlike many Title VII cases, plaintiff's transfer or demotion and her discharge were recommended by a black, Arnold Snyder, who was plaintiff's supervisor. Moreover, the evidence demonstrates that the District's record for hiring minorities was commendable. In 1972, the year of plaintiff's discharge, of eighty-eight full-time employees hired, thirty-nine or forty-four percent were from minority groups. An exhibit offered by plaintiff reveals that the chief personnel officer was black, as were a substantial portion of the District's officers and employees in all echelons of employment, the President of one of the District's three

2. In *Green* the Supreme Court allocated the burden of proof in a Title VII failure to hire case as follows: the complainant must carry the initial burden of establishing a prima facie case of racial discrimination; the burden then shifts to the respondent to articulate some legitimate, nondiscriminatory reason for the employee's rejection; the employee must then be afforded a fair opportunity of proving that the employer's reason was pretextual.

colleges, and the President of the Junior College District Board of Trustees.

■ The record abounds with evidence showing that plaintiff has no one to blame for her discharge but herself. Plaintiff's offensive personal habits, her failure to perform her work satisfactorily although capable of doing so, and her practice of conducting her personal real estate business on the District's premises and time, were factors which precipitated her demotion and ultimately, her discharge. Plaintiff's language and personal demeanor in the presence of other employees was vulgar, offensive, disgraceful, and highly distasteful to say the least. The epithets directed to and concerning Mr. Snyder are too opprobrious to incorporate in this opinion. They were of such a disgraceful nature and made so frequently that other employees complained to Mr. Snyder, who in turn warned plaintiff that her conduct could not be tolerated.[3]

Plaintiff introduced evidence concerning two white women who were disciplined for misconduct, yet not discharged. One woman engaged in excessive talking, loitering, and extensive lunch hours and the other refused on one date to carry out the work assigned. We fully agree with the district court that the conduct of the two white employees was not of comparable seriousness.

In summary, we cannot say that the district court's conclusions that plaintiff was not discriminated against on account of her race or in retaliation for the filing of charges were based on clearly erroneous findings. *See King v. Yellow Freight System, Inc., supra* at 882; *Terrell v. Feldstein Company, Inc.,* 468 F.2d 910, 911 (5th Cir. 1972). Indeed, on this record the court would not have been justified in finding that Title VII, 42 U.S.C. § 2000e *et seq.* was in any respect violated. The judgment is affirmed.

---

**3.** One lesser offensive incident is illustrative of plaintiff's attitude toward Mr. Snyder. On the morning of the day of her discharge, plaintiff, upon emerging from Mr. Snyder's office, informed one of her friends, who was another employee, that she "had told Arnold [Snyder] he was an Uncle Tom . . . I think she was basically trying to describe to me that she had 'read him off' . . . and I was shocked at her reading him off. . . . She talked about 'beating the s—t' out of him . . . She said she had told Arnold that this was what she was going to do."