**Namon HENRY, Jr., Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

**No. 76–1127.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1976.

Decided April 14, 1977.

Sandra C. Midkiff, Pickett & Midkiff, Kansas City, Mo., for appellant.

William Pickett, Pickett & Midkiff, Kansas City, Mo., on brief for appellant.

Robert L. Driscoll, Kansas City, Mo., on brief for appellee.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

WEBSTER, Circuit Judge.

Namon Henry, a black man, appeals from a judgment in favor of his former employer, defendant Ford Motor Co., on a complaint alleging that the termination of his employment was the product of racial discrimination.

From April 29, 1965, through September 10, 1969, appellant was an employee at Ford's Claycomo, Missouri, assembly plant. In August, 1968, he was assigned to perform the "right hand striker plate" operation on an assembly line. As automobiles passed on the line, he was to install a "striker plate" on the door frame, and a "marker light" on the right rear quarter panel. In May, 1969, a jig fixture was incorporated into the striker plate operation. This fixture was used to properly align the striker plate; its use required more motion for the operator to complete his function in the assigned time. Ford experienced considerable difficulty with the jig fixtures; they frequently required repair. The fixture used for the Falcon, one of two cars manufactured on appellant's line, was soon abandoned. The fixture used for the Maverick, the other car, was retained.

After incorporation of the jig fixture into the striker plate operation, appellant was subjected to a series of disciplinary actions under Ford's progressive disciplinary system. In each instance he was charged with poor workmanship. He was repeatedly charged with failure to complete installation of the marker lights on several automobiles and failure to use the jig fixture. He was also charged with fumbling, talking to other employees, dropping stock, and failing to start at the beginning of his station. On one occasion he was told by his foreman to wear an apron to carry parts, so as to reduce motion; he replied that he could not wear an apron.

Appellant was disciplined six times, with each action after the second resulting in a greater penalty. Finally, he reached the last step in the progressive discipline system, and was discharged.

After exhausting his administrative remedies, appellant filed this action, based on both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. He claimed that he was discriminated against on the basis of race in that he had

---

* The Honorable Talbot Smith, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

been required to use the jig fixture, and white employees had not. The case was tried to the court, which found for the defendant. Particularly, the District Court[1] found that the jig fixture requirement was not enforced in a discriminatory manner, that plaintiff was not discriminated against because of race, that he was lawfully terminated because he was inefficient and unable or unwilling to perform his duties, and that, if anything, "he was given more consideration than he deserved without adequate effort on his part to perform his minimum duties." The District Court found "a total lack of proof of a *prima facie* case of racial discrimination as defined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973)." This appeal followed.

■ Appellant does not deny that he did not adequately perform the job assigned to him. He asserts instead that his inability to perform resulted from the requirement that he use the jig fixture, and that this requirement was enforced discriminatorily. He contends that he was required to use the jig fixture at all times, and was disciplined for failing to do so, but that white operators were not required to use the fixture. His principal contention on appeal is that the District Court's findings to the contrary are clearly erroneous.

Judge Becker found that not only was there no racially disparate treatment, but also that "the job requirements for the striker plate and tail light casting operation in which plaintiff was employed were racially neutral, reasonable and based on justifiable and necessary business considera-

tions, and that these requirements were applied by defendant evenhandedly to all employees regardless of race."

We have carefully examined the record in this case. Judge Becker's findings of fact are supported by substantial evidence and are not clearly erroneous.

■ There was some evidence by appellant that he and at least one other black man were subjected to discipline for not using the jig fixture whereas white workers were not. The company offered controverting evidence that raised credibility issues for the trier of the fact on this question of disparate treatment.[2] Appellant argues that the conclusion of the District Court that appellant had failed to establish a prima facie case of discrimination was based on an erroneous view of the case, because it applied a preponderance of the evidence test in making that determination. Contrary to appellant's novel contention, we do not read *McDonnell Douglas Corp. v. Green, supra,* as requiring the District Court to ignore the company's evidence of nondisparate treatment in deciding whether the employee has made a prima facie case.[3] As used in *McDonnell Douglas,* "prima facie" does not mean the degree of evidence necessary to resist a motion to dismiss. It means that if the net of the evidence adduced by both parties leaves the fact finder convinced that there has been disparate treatment between a member of a racial minority group and others not of that group, there has been a prima facie showing of racial discrimination and the burden of proof then shifts to the company to prove the employ-

1. The Honorable William H. Becker, Chief Judge, United States District Court for the Western District of Missouri.

2. Appellant's foreman testified that on July 1, 1969, he advised a white operator named Mehl to use the fixture; Mehl did use it thereafter. On July 9, he admonished another white operator named Hysle, who had not been using the fixture; Hysle thereafter used the fixture. During one of appellant's absences, Jimmy Hylton took his place, and completed the entire job, using the jig fixture. A white probationary employee named Mullins was unable to do the work, and was discharged. A white employee

named Ruckman did not use the fixture. He was taken to labor relations for warning, and thereafter used the fixture. A black replacement worker named Goodwin was able to perform the entire job, using the jig fixture.

3. We will assume, without deciding, that the tests in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), can be made applicable to discharge cases. *But see Stevens v. Junior College District of St. Louis-St. Louis County,* 548 F.2d 779 at 781 (8th Cir. 1977); *King v. Yellow Freight System, Inc.,* 523 F.2d 879, 882 (8th Cir. 1975).

ee was treated in the manner complained of for valid reasons other than race. It would be senseless to confine the initial determination to a review of the complaining party's evidence; if the company can refute the claim of disparate treatment it need not shoulder the burden of proving a valid nondiscriminatory purpose.

After a careful summary of the evidence Judge Becker concluded that "the determination to terminate plaintiff's employment was based on plaintiff's inefficiency as an employee and that that determination was racially neutral, fair and based on business necessity." These findings are likewise supported by substantial evidence and are not clearly erroneous.[4] Even if our reliance on Judge Becker's initial finding of nondisparate treatment should be misplaced, it is clear that the company has met whatever burden remained to show a valid nondiscriminatory purpose in terminating appellant. *See Garrett v. Mobil Oil Corp.,* 531 F.2d 892, 895 (8th Cir. 1976); *King v. Yellow Freight System, Inc.,* 523 F.2d 879, 882 (8th Cir. 1975); *Naraine v. Western Electric Co.,* 507 F.2d 590 (8th Cir. 1974). *See also Potter v. Goodwill Industries of Cleveland,* 518 F.2d 864, 865 (6th Cir. 1975) (district court erroneously found no prima facie case; Sixth Circuit affirmed on basis of district court's determination that, had prima facie case been made, it would have been rebutted).

Concluding that Judge Becker's findings of fact are not clearly erroneous and that no error of law appears, we affirm the judgment for the defendant Ford Motor Co.

---

**4.** There was evidence that failure to accomplish assigned tasks compounded problems on a moving assembly line. There was strong evidence that other persons were able to complete the entire task using the jig fixture. Many of appellant's difficulties were unrelated to the jig fixture. Ford engineers who logged appellant reported that he worked at a very slow pace. Foreman McCort testified that he sometimes stopped to talk with fellow employees, and started work on a unit well after it reached his station. Some of the units on which he failed to complete work were Falcons, for which use of the jig fixture was not required. McCort suggested that he wear an apron to carry parts, but appellant refused. In addition, appellant had a long history of disciplinary problems before being assigned the striker plate operation.