Doris MOSBY, Appellant,

v.

WEBSTER COLLEGE, Appellee.

No. 76–2064.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 31, 1977.

Decided Oct. 12, 1977.

David A. Lang, Clayton, Mo., for appellant; Forriss D. Elliott, St. Louis, Mo., on brief.

Harold P. Heitmann, Clayton, Mo., for appellee; Wayne L. Millsap, Pamela S. Wright, Clayton, Mo., on brief.

Before ROSS, STEPHENSON and HEN-LEY, Circuit Judges.

ROSS, Circuit Judge.

Doris Mosby, a black woman, brought this action against Webster College, her former employer, under the provisions of 42 U.S.C. §§ 1981 and 2000e, *et seq.*, alleging that the college discriminated against her on the basis of race by declining to renew her teaching contract and in refusing to promote her to the rank of full professor. The district court[1] denied relief, holding that the college showed its actions to have been taken for valid nondiscriminatory reasons. We affirm.

Dr. Mosby, who holds a Ph.D. in clinical child psychology, was hired by Webster College for the 1972–73 academic year as an associate professor without tenure and given teaching assignments in both the undergraduate psychology department and in the graduate Master of Arts and Teaching program. Her contract was renewed for the 1973–74 academic year.

In August of 1973, Dr. Mosby applied for promotion to the rank of full professor. Webster College grants such promotions only to those teachers who have four years of experience as an associate professor or who have attained an "extraordinary level of contribution" to the college. After conducting hearings, the faculty committee on tenure, rank and sabbatical found Dr. Mosby's teaching performance to be less than extraordinary and recommended that her request for promotion be denied.

Also during the fall of 1973, Dr. Mosby was evaluated for contract renewal for the upcoming 1974–75 academic year. Based upon the report of the committee on tenure, rank and sabbatical and upon the negative recommendations of Mosby's department head and the undergraduate dean, Drs. Gerdine and Kelly (president and vice president of the college) rendered a final decision of nonrenewal of Dr. Mosby's contract. Because of this decision, the question of a promotion was not separately considered. Dr. Mosby was given her notice of nonrenewal on December 14, 1973.

---

1. Honorable John K. Regan, United States District Judge, Eastern District of Missouri.

At trial Dr. Mosby attempted to show that the termination of her contract was handled differently by the college than were those of white teachers. She also introduced statistical evidence designed to show a preexisting racially discriminatory animus on the part of the college. In response the college contended that Dr. Mosby's nonpromotion and termination were for good cause, citing numerous grounds for its actions. The district court, sitting without a jury, held that the grounds offered by the college constituted good cause for Dr. Mosby's termination and dismissed the complaint. On appeal to this court, Dr. Mosby asserts error in the trial court's (1) failing to conclude that she had established a prima facie case, and (2) finding that the reasons offered by the college for its actions were not a mere pretext. The college asks for its costs on appeal, including an award of attorney's fees.

## I. Prima Facie Case.

■ In Title VII cases alleging individual instances of racial discrimination the plaintiff must carry the initial burden of establishing a prima facie case.[2] Having done so, the burden then shifts to the employer to demonstrate valid nondiscriminatory reasons for his action. The plaintiff must then be given a fair opportunity to show that the reasons tendered by the employer are merely a pretext, thus demonstrating that the employer's conduct was in reality racially motivated. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Thompson v. McDonnell Douglas Corp.,* 552 F.2d 220, 221 (8th Cir. 1977); *Garrett v. Mobil Oil Corp.,*

531 F.2d 892, 895 (8th Cir.), *cert. denied,* 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976).

Dr. Mosby insists that she discharged her burden of establishing a prima facie case and that the district court erred in holding to the contrary. In support of her argument Dr. Mosby points to three statements of fact stipulated to by the parties which she urges as proof that she was treated differently by the college than were white faculty members. These statements show essentially that, prior to receiving her notice of nonrenewal, Dr. Mosby had never been warned that any aspect of her teaching performance was less than satisfactory while some white teachers had in the past been so warned.

■ Contrary to Dr. Mosby's assertion, the district court did not specifically rule on the sufficiency of this evidence to establish a prima facie case,[3] concluding instead that, under the evidence taken as a whole, the college showed its actions to have been nondiscriminatory. Thus, the question before us is whether the district court erred as a matter of law in deciding that the college should prevail on its defense without having first decided whether the plaintiff carried her initial burden of establishing a prima facie case. We conclude that this was not error. *See Thompson v. McDonnell Douglas Corp., supra,* 552 F.2d at 221; *Garrett v. Mobil Oil Corp., supra,* 531 F.2d at 895.

It is apparent that in cases such as this the employer may prevail on either of two grounds. He may refute the existence of a prima facie case by showing to be nonexistent the facts upon which the inference

---

**2.** We note that, as used in this context, a "prima facie case" consists of facts sufficient to sustain the inference that the challenged action of the employer was motivated by impermissible considerations. In determining whether a prima facie case has been made, the district court must look to the evidence of both parties relating to the existence of those facts upon which the inference of discrimination depends. *Henry v. Ford Motor Co.,* 553 F.2d 46, 48–49 (8th Cir. 1977).

**3.** At trial Mosby also attempted through the use of statistical evidence to show a preexisting

discriminatory animus on the part of the college. However, Mosby stipulated that Webster College has, for a number of years, been actively involved in numerous programs designed to facilitate the entrance of minority applicants into higher education. On this evidence, the district court concluded that "[t]he history of Webster College clearly refutes any possible inference of anti-black bias generally * *." Mosby does not challenge this finding on appeal and our review is therefore limited to Mosby's contention that she was treated differently than white faculty members.

of discrimination is sought to be sustained. Were this the case, the plaintiff would have failed to carry the initial burden and the employer need do no more. *Henry v. Ford Motor Co.*, 553 F.2d 46, 48–49 (8th Cir. 1977). Alternatively, the employer may proceed to his proof that his actions were taken for legitimate reasons, thereby rebutting the inference of discrimination created by the plaintiff's prima facie case. In these circumstances, the plaintiff must be given the opportunity to respond by showing that the reasons tendered by the employer are a pretext. Absent such a showing, the employer is entitled to prevail. It is on this latter ground that the district judge reached his conclusion in the instant case. As discussed below, we agree that the reasons offered by the college constituted good cause for Dr. Mosby's termination and also conclude that the district court's finding that these reasons were not a pretext is supported by substantial evidence. Accordingly, we likewise find it unnecessary to decide whether Dr. Mosby successfully established a prima facie case, but for the purpose of this opinion, we will assume that she did.

## II. Pretext.

■ Webster College asserted a number of grounds for its nonrenewal of Dr. Mosby's contract, among them negative student reaction to her teaching methods and her refusal to accept a sufficient number of student advisees. More significantly we think is the allegation that Dr. Mosby, contrary to representations made during preemployment interviews, expressed her unwillingness and lack of competence to assume the responsibility of teaching certain special education courses when asked

4. Dr. Mosby testified that she was aware of student dissatisfaction beginning approximately one month after she started teaching at Webster and that such unrest continued throughout her stay at the college.

5. All three of the persons who conducted preemployment interviews with Dr. Mosby testified that they had explained that Webster College was interested in developing a special education program and that Dr. Mosby would be expected to participate in that endeavor.

to do so in the spring semester of 1973. It is stipulated that Dr. Mosby's refusal to teach these courses necessitated the college's hiring additional personnel during a period of financial hardship for the school.

It cannot be seriously contended that these allegations are untrue. It is undisputed, for instance, that there was negative student reaction to Dr. Mosby's work[4] and that she refused to teach the courses requested.[5] Nor does Mosby deny that these factors were considered in making the decision to terminate her employment, or even that such factors would not constitute good cause for doing so. The thrust of Dr. Mosby's argument is that another ground asserted by the college was in fact a pretext and therefore the entire defense offered by the college is tainted and must be deemed a pretext. We reject this argument.

One ground offered by the college in support of its decision was Dr. Mosby's failure to submit a satisfactory proposal as requested concerning the development of an apprentice teaching program at the college. Dr. Mosby insists that her proposal was not submitted until January of 1974, some time *after* she had received her notice of nonrenewal. This, she urges, is obviously a pretext. It appears, however, that Dr. Mosby submitted two proposals—one in January of 1973; another in January of 1974. The district court specifically addressed this fact in his opinion, noting that both proposals had been rejected as "unrealistic and unsatisfactory." In its enumeration of grounds for Dr. Mosby's termination, Webster College did not specify which unsatisfactory proposal had been considered, but inasmuch as the college referred to Dr. Mosby's proposal in the singular,[6] it is obvious that the

Dr. Mosby similarly admitted on cross-examination that she understood at the time she was being hired by the college that it was with an eye toward her eventual participation as a teacher in the expanding special education program.

6. Among the enumerated grounds for Dr. Mosby's nonrenewal, Webster College included the following statement:
Because no students were involved in the apprentice-teaching program, Dr. Bouchard

college was not asserting that both proposals had been taken into account. Accordingly, we agree with the district court's finding that Dr. Mosby failed to prove that the grounds offered by Webster College were a pretext.[7]

## III. Attorney's Fees.

As part of its costs on appeal, Webster College seeks to recover an award of attorney's fees under 42 U.S.C. § 2000e–5(k), which provides that the court may, in its discretion, allow such an award to the "prevailing party." While we agree with the college that the prevailing party may be either the plaintiff or the defendant, we find in this case no demonstrable evidence of bad faith on the part of Dr. Mosby in bringing this action and accordingly decline to grant the requested fees.

Attorney's fees have been routinely awarded to a prevailing plaintiff in civil rights cases unless special circumstances render such an award unjust. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McCampbell v. Chrysler Corp.*, 425 F.Supp. 1326, 1327 (E.D.Mich.1977). The purpose of this policy is to encourage the vindication of civil rights through private litigation. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 263, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir. 1976). Such a rationale does not support a similarly liberal policy for awarding attorney's fees to a prevailing defendant. On the contrary, such a policy would likely have the effect of discouraging private suits in all but the clearest cases of discrimination. However, while a prevailing defendant should not be permitted attorney's fees as a matter of routine, it does not follow that policy dictates that he be foreclosed from such an award in all cases. Indeed, the

statute plainly requires otherwise. Thus, though it can be argued that any award to a prevailing defendant will discourage private litigation to some extent, "the answer undoubtedly is that the Congressional intention was to encourage responsible litigation but to discourage baseless or frivolous actions." *Carrion v. Yeshiva University, supra*, 535 F.2d at 727. We think the section authorizing attorney's fees to the prevailing party has been accurately characterized as

> an accommodation between two congressional concerns. The first, the inability of low income minorities to bear the financial burden of attorney's fees in vindicating their Civil Rights; and, secondly, the award of attorney fees to those parties who must defend against unreasonable, frivolous, meritless or vexatious actions brought by either private parties or the government.

*United States Steel Corp. v. United States*, 385 F.Supp. 346, 348 (W.D.Pa.1974), *aff'd*, 519 F.2d 359 (3d Cir. 1975).

Those factors which have prompted courts to award attorney's fees to a prevailing defendant are typified by a finding that the plaintiff brought his action in bad faith. *See McCampbell v. Chrysler Corp., supra*, 425 F.Supp. at 1328; *Carrion v. Yeshiva University, supra*, 535 F.2d at 728. We do not in this case attempt to define the outer limits of the concept of bad faith as used in this connection. It is sufficient for present purposes to note that Webster College made no attempt to demonstrate that Dr. Mosby's action was instituted for any reason other than her earnest belief that she was a victim of racial discrimination. Nor can we say that her legal theories were so empty and frivolous as to imply a vexatious motive. Accordingly, Webster College's re-

suggested that Dr. Mosby design a program to train teachers of learning disabled children. Dr. Mosby's *proposal* was totally unsatisfactory in that *it* was merely a restatement of Missouri requirements for teacher certification and the College's then current procedures. (Emphasis supplied.)

7. Because of our disposition regarding Dr. Mosby's termination, we do not separately address the question of whether she should have been granted a promotion.

quest for an award of attorney's fees will be denied. Judgment affirmed.