Iniece DAVIS, Jr.

v.

BRANIFF AIRWAYS, INC.

No. CA 3–77–1398–F.

United States District Court,
N. D. Texas,
Dallas Division.

April 11, 1979.

E. Brice Cunningham, of Cunningham, Greenidge & Gaines, Dallas, Tex., for plaintiff.

Amos N. Moses Jr., of Braniff Airways, Braniff Airways, Inc., Dallas, Tex., Jack J. Gallagher and Craig N. Moore of Akin,

Gump, Hauer & Feld, Washington D.C., for defendant.

## MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

On July 31, 1978, Defendant Braniff Airways, Inc. filed its motion to dismiss or in the alternative for summary judgment in the above styled and numbered cause. The Court has considered the Defendant's motion, brief, and affidavits, and is of the opinion that summary judgment should be granted to the Defendant.

The complaint arose out of Braniff's termination of Mr. Davis, a black male employed as Flight Service Attendant, for a fighting incident on October 17, 1976 involving Mr. Davis and three white Braniff employees. Braniff discharged the four employees, who pursued grievance procedures through Braniff's Discharge Board of Adjustment. The Board upheld the discharge on November 29, 1976.

Mr. Davis filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC) on January 6, 1977, contending that Braniff had discharged him because of his race. On July 21, 1977, the EEOC issued its determination that "there is not reasonable cause to believe that Title VII of the Civil Rights Act of 1964, as amended, has been violated in the manner alleged . . . Should the Charging Party wish to pursue this matter further, the Charging Party may do so by filing a private action in Federal District Court within 90 days after receipt of this letter . . ."

Mr. Davis received the right to sue notice on July 22, 1977, and instituted suit in this court on October 21, 1977, 91 days later. His complaint alleged a class action on behalf of "Negroes, Spanish Surname and female persons who are now, have been, might have been or might become members of the International Brotherhood of Teamsters and who are now employed, were em-ployed, might have been employed or might become employed by the Respondent at its plant and offices since July 2, 1965". The complaint alleged that Braniff maintained various discriminatory policies and practices, as well as having terminated Mr. Davis on the basis of his race.

■ I find that Mr. Davis' individual claim of racial discrimination through his employment by Braniff is barred by the res judicata effect of a consent decree entered on November 23, 1976, in *Frederick High v. Braniff Airways, Inc.*, Civil Action No. SA–73–209 (W.D.Tex., San Antonio Div.) and by his execution of a release agreement on December 15, 1976, discharging Braniff from all further claims for racial discrimination in employment that arose prior to the date of this signing. His claim of employment discrimination against a purported class of certain black and Spanish-surnamed applicants and certain black employees of Braniff likewise is barred by the res judicata effect of the *High* consent decree and by the execution of similar release agreements by 115 class members in the *High* case. Those claims of employment discrimination against a purported class of certain female applicants and employees of Braniff is barred because Mr. Davis' Title VII claim in this case was filed untimely and because section 1981 of Title 42 of the United States Code does not address sex discrimination in employment. The claims of employment discrimination against a purported class of certain Spanish surnamed employees of Braniff are barred because Mr. Davis is not a member of the class he purports to represent and because he would be an inadequate representative of such a class.

■ Braniff has further requested in its motion that it be awarded attorney's fees as a prevailing party in this Title VII action. Section 706(k) of the Civil Rights Act of 1964 authorizes award of attorneys' fees as part of the costs in actions under Title VII.[1]

---

1. That subsection provides:

"(k) In any action or proceeding under this title [§§ 2000e–2000e–15 of this title] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United

Any such award is discretionary with the court, but the considerations influencing its exercise of discretion will differ, depending on whether the prevailing party is the Plaintiff or Defendant.[2]

■ This circuit has repeatedly held that courts should liberally interpret the statutory provision when contemplating an award of attorneys' fees to successful plaintiffs, *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721 (5th Cir. 1976), in recognition of the Congressional policy of having Title VII enforced by individuals who act as private attorneys general. *Carey v. Greyhound Lines, Inc.*, 380 F.Supp. 467, 474 (D.C.La. 1973), *aff'd in part and rev'd in part on other grounds*, 500 F.2d 1372 (5th Cir. 1974).[3]

■ In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court recognized the applicability of section 706(k) to defendants who prevail in Title VII suits, and specifically addressed the issue of what standards should guide the trial court's discretion in awarding attorneys' fees to successful defendants. In rendering its decision, the Court carefully distinguished between the standard for determining awards to prevailing plaintiffs, which favors such awards in "all but special circumstances." 434 U.S. at 417, 98 S.Ct. 694. This liberal standard was expressly rejected for prevailing defendants, however. The Court noted that the equitable considerations favoring successful plaintiffs were inapplicable to prevailing defendants. The Court concluded, despite a dearth of legislative history, that section 706(k) envisioned financial protection to defendants only from "burden-

some litigation having no legal or factual basis." *Id.* at 420, 98 S.Ct. at 700. Consequently, discretion should be exercised in favor of defendants in Title VII actions only where the suit brought is found to be frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. 434 U.S. at 421, 98 S.Ct. 694.[4]

The standard must be applied against the facts present at the time the suit was filed or throughout its proceeding to judgment; its assessment must not be influenced by knowledge gained by hindsight.

The Plaintiff has argued that circumstances present at the filing of this lawsuit do not evince those required by *Christiansburg* to justify award of attorney's fees to the Defendant. Specifically, Plaintiff's counsel argues that the suit was premised upon facts not embraced by the language of the *High* decree, and that the release signed by the Plaintiff, which does extend to the facts at issue in the suit, was not available to the Plaintiff's attorney at the time suit was filed. Similarly, the Plaintiff argues that the documents made the basis of Defendant's later motion to dismiss were not available to Plaintiff's attorney at the time of the lawsuit's filing.

■ Courts have viewed with disfavor a practice of routinely awarding fees to prevailing Title VII defendants, upon the rationale that the average Plaintiff in such actions knows little more than that they had been filed, his belief that the act occurred as the result of discrimination, and that generally he would defer to the advice of his attorney regarding the propriety of suit; similarly understood is the frequent

---

States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for the costs the same as a private person."
42 U.S.C. § 2000e–5(k).

2. *See generally,* 16 *A.L.R.Fed.* 643, §§ 5, 6 (Supp.1978).

3. *See also United States v. Georgia Power Co.,* 474 F.2d 906 (5th Cir. 1973); *Hernandez v. Powell,* 424 F.Supp. 479, 481 (N.D.Tex.1977); *Shaffield v. Northrop Worldwide Aircraft Services, Inc.,* 373 F.Supp. 937 (N.D.Ala.1974); *United States v. United States Steel Corp.,* 371

F.Supp. 1045, 1063–64 (N.D.Ala.1973), *vacated in part and appeal dismissed in part,* 520 F.2d 1043 (5th Cir. 1975); *Sabala v. Western Gillette, Inc.,* 371 F.Supp. 385, 393–94 (S.D.Tex. 1974), *aff'd in part and rev'd and remanded in part,* 516 F.2d 1251 (5th Cir. 1975).

4. *Cf., Goff v. Texas Instruments, Inc.,* 429 F.Supp. 973 (N.D.Tex.1977), where Judge Hill of this Division permitted an award of attorneys' fees against a plaintiff who had litigated in bad faith.

unavailability of information necessary to determine whether suit was proper. *McCampbell v. Chrysler Corp.*, 425 F.Supp. 1326 (E.D.Mich.1977). At issue here is whether the information regarding the release was so clearly before the Plaintiff or his attorney as to trigger the *Christiansburg* standard.

In its response through affidavit, the Defendant refutes Plaintiff's characterization of facts present at the time the lawsuit was filed. The Plaintiff and his counsel received actual notice of the *High* consent decree in the fall of 1976. The Plaintiff's signed release of liability, now conceded to cover his claims in this lawsuit, was among documents in the investigative file compiled by the EEOC subsequent to the Plaintiff's charge to that agency. Thus, diligence by Plaintiff's counsel would have divulged the fact of his client's assent to the release of liability against the Defendant. I am not persuaded that his failure to unearth this document in the file of the EEOC was sufficient to trigger imposition of defense attorney's fees measured from the date of the filing of the complaint, however.

The *Christiansburg* standard is equally available where the plaintiff continues to litigate after it becomes clear that his claim was frivolous, unreasonable or groundless. 434 U.S. at 422, 98 S.Ct. 694. Assuming that Plaintiff's counsel filed the suit without effective notice of the release signed by his client, the events subsequently occurring dispel doubt regarding his propriety in continuing litigation of this suit. Plaintiff's counsel was advised orally and by letter in February 1978 that the Defendant believed the suit was frivolous and patently without merit. The letter reflects two bases for this contention: (1) that the facts surrounding the discharge of Mr. Davis clearly indicated equal treatment by Braniff of all individuals involved in the dispute; and (2) that the *High* consent decree operated to bar the claim through the doctrine of res judicata. The letter concluded that the Defendant would pursue its position by filing a motion to dismiss with this Court. On February 20, Plaintiff's counsel responded, merely acknowledging receipt of Defendant's letter and indicating that Plaintiff would oppose the motion to dismiss. At this time, the Defendant had not specifically addressed the release actually signed by the Plaintiff, although the *High* consent decree contained as an appendix a sample form of the release required to be signed by class members.

The motion was filed on August 2, 1978, and included the argument that Plaintiff's claims were barred by the res judicata effect of the *High* consent decree, of which the Plaintiff had actual notice, and specifically stated the fact and effect of the release signed by the Plaintiff and other class members. That release provided that its signer, in consideration for a sum of money, agreed to release the Defendant

> "from all claims, causes of action which the undersigned may have on behalf of himself and/or others, known or hereafter discovered by the undersigned on account of or connected with or resulting from any alleged violations by the [Defendant] based on race, color, or national origin, occurring on or before the date of execution of this Release . . ."

The conduct forming the basis of this lawsuit occurred on October 17, 1976. The release recited in part above was signed by Mr. Davis on December 16, 1976. Defendant's motion to dismiss appends the *High* decree as an exhibit. On page 25 of the decree is found the following language: "In order to receive any monetary relief, each eligible Class Member shall be required to execute a release in the form set forth on Appendix E hereto." The release form provided the class in connection with the consent decree is attached to the decree; it is followed as a separate exhibit in support of Defendant's motion to dismiss by a copy of the same form showing as signatory Iniece Davis, Jr. Plaintiff does not now dispute that he did sign the release on December 16, 1976.

Plaintiff's counsel has argued that attorney's fees should not be awarded, because only upon viewing this release did he realize that no right to relief existed. It is evident even from a most permissive view of the

foregoing chronology, however, that Plaintiff's counsel had full notice of the release upon receipt of the motion and its attachments.

The teaching of *Christiansburg* is manifest: when it becomes clear that the plaintiff's claim is frivolous, unreasonable or groundless, yet the plaintiff continues to litigate, the district court has discretion to award attorney's fees to a prevailing defendant. 434 U.S. at 422, 98 S.Ct. 694.

Notwithstanding receipt of the motion, Plaintiff did not abandon his position that the litigation should continue. The Local Rules of Practice before the Northern District of Texas provide, in pertinent part, that "any response to a motion shall be filed within 20 days from the date of the filing of the motion." Rule 5.1(e). Thus, any such response to the Defendant's motion was due in this court by August 22, 1978. The Plaintiff did not timely rebut the contentions of the motion to dismiss, nor did he inform either the court or the Defendant that he conceded the arguments set forth in the motion. On February 5, 1979 this Court informed the parties by letter that a hearing would be held to consider the motion on March 5, 1979. The letter further directed that briefs and other materials were expected to be filed in accordance with the Local Rules. Despite this rather pointed reminder, Plaintiff wholly failed to respond in any manner to the motion to dismiss. At no time prior to the hearing did he indicate that the complaint would be withdrawn.

On March 5 both parties appeared through counsel before the Court. At that time the Court found that the Defendant's motion was well taken and that the issue of attorneys' fees would be considered, to which Plaintiff's counsel was invited to respond by letter brief. The substance of that response has been earlier recited.

It is difficult to avoid the conclusion that this case presents a classic example of a plaintiff who forced his defendant to continue litigating well after a time at which he must have realized, had he read the motion to dismiss, that his complaint was truly groundless. At the least, Plaintiff should have withdrawn his complaint after receipt and examination of the motion to withdraw that contained the release affecting the incident complained of in this suit. Instead, the Plaintiff delayed over six months, failing to respond in any fashion until after the hearing before the Court, when he finally conceded the validity of the motion. Even though more praiseworthy conduct would have uncovered the release prior to instigation of the suit, and prior to preparation and submission of the motion, surely the *Christiansburg* doctrine applied upon receipt of the motion to dismiss. At that time he could have concluded, as later admitted, that the suit was frivolous. Instead, through his refusal to react, the case was unduly prolonged, thereby abusing both the Court's and opposing counsel's time, as well as the resources of the latter.

The Defendant has sought only a partial or nominal award; it does not request an award by this Court of the full cost it has borne in its defense of the action. Rather, it desires through some monetary award under section 706(k), a recognition that plaintiffs in Title VII cases carry an obligation to cease litigation when it becomes apparent that the case lacks merit.

Because I find that Plaintiff's duty at the least was triggered upon his receipt of the motion to dismiss, I find that any hours attributable to defense of the action after such time are properly awardable under section 706(k).

My determination of the amount of attorneys' fees awardable is clearly a discretionary matter, *Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437 (5th Cir. 1974), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308. Upon a favorable exercise of discretion, the basis for the amount actually awarded must be disclosed. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974); *Mims v. Wilson*, 514 F.2d 106 (5th Cir. 1975). Appropriate factors to consider may include those specified by the American Bar Association in its Canons of Ethics and Code of Professional Responsi-

**16**

bility. *Clark v. American Marine Corp.*, 320 F.Supp. 709 (D.C.La.1970), *aff'd per curiam,* 437 F.2d 959 (5th Cir.).[5] Consequently, the Defendant is directed to submit by affidavit within fifteen days a statement of time and services rendered during the period discussed above.[6] The Plaintiff may respond within ten days following receipt of the Defendant's affidavit. Should the amount or its underlying basis be contested, I will schedule a hearing to make a final determination of amount. *See Hernandez v. Powell,* 424 F.Supp. 479 (N.D.Tex.1977); *LeBlanc v. Southern Bell Tel. & Tel. Co.*, 333 F.Supp. 602 (E.D.La.1971); *aff'd per curiam,* 460 F.2d 1228 (5th Cir. 1972).

██ This opinion will be published and serve to put Title VII litigants on notice that this Court, while respecting the purposes envisioned by the Act, will sanction neither initiations or continuation of Title VII proceedings that clearly demonstrate no possible merit.

It is so ORDERED.

---

[5] Such factors may include time and labor required, the novelty and difficulty of the question involved and the skill required to perform the legal service properly; the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer performing the services; and whether the fee is fixed or contingent.

Certainly, several of these factors appear to suggest the relationship of a plaintiff and his attorney; nevertheless, the defendant may include in his statement of costs sought any of the above factors that it believes are relevant to the issue.

[6] Through affidavit of counsel, Defendant claims that over one hundred hours were spent in the defense of this action, and of this, that over twenty-five hours are attributable to preparation of the motion to dismiss. There is no account, however, reciting the time and nature of services rendered in this case subsequent to the filing of the motion.