468 F.Supp. 1115 (1979)
Walter WRIGHT and Anne Wright, Plaintiffs,
v.
John A. OWEN and Mabel Owen, Defendants.
No. 77-1284C(1).
United States District Court, E. D. Missouri, E. D.
March 30, 1979.
*1116 Elizabeth C. Kennedy, Chopin & Kennedy, P. C., St. Louis, Mo., for plaintiffs.
Vincent S. Moody, Clayton, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
This matter was tried to the Court. The Court has been duly advised by testimony, exhibits, and briefs of the parties. The Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT
1. Defendants Mabel and John Owen are brother and sister who inherited one condominium/apartment unit at 10741 Carroll Wood Way in St. Louis County, Missouri, about four years ago.
2. John Owen has not been shown to have received any income from the said unit *1117 or have had anything to do with it whatsoever or had any knowledge concerning this unit. Accordingly, the complaint will be dismissed as to him.
3. Mabel Owen (hereinafter Mrs. Owen) has rented the apartment, except for one room which is reserved for her storage, since she and her brother inherited it. Prior to November, 1977, Owen rented the unit in question to three consecutive tenants. Because a neighbor, Mathilda Stein (hereinafter Mrs. Stein), who occupies the neighboring unit at 10743 Carroll Wood, had caused problems for Mrs. Owen's first two tenants, the third tenant, Julie Sophos (hereinafter Ms. Sophos), the agent for Mrs. Owen, was asked to talk with Mrs. Stein prior to renting the unit.
4. Ms. Sophos notified Mrs. Owen in October of 1977 that she was going to vacate the unit on December 1, 1977. In response to this notice Mrs. Owen wrote the following letter to Ms. Sophos:
 11/2/77
Dear Julie:
I'm sorry to lose a good renter, but I'm sure you will be happier with your friends.
I'd really appreciate it if you can find me a good renter, and I'd be glad to pay you the usual commission. I am returning the form to the Board of Managers, but I doubt that they will have a renter. I am enclosing the form that must be filled out.
I think I should raise the rent $5. Taxes will probably go up, and the condominium fees are sure to.
I will return your deposit  the apartment is in better condition than it was  and pay any other expenses you have such as advertising. Send me your bill.
Use your judgment in picking a renter  and Mrs. Stein's. I'd rather lose a month's rent and get a good one than take a doubtful one.
Thank you for sending me the condo papers. The managers finally sent me another copy. And thank you for your many kindnesses while I was in St. Louis last summer.
 Sincerely,
 (signed) Mabel
5. Pursuant to the directives in this letter, Ms. Sophos placed an advertisement on or about November 14 in the St. Louis Post-Dispatch wherein the apartment was listed as a one bedroom unit for rent at $185.00 per month. The telephone numbers of both Sophos and Mrs. Stein were listed in the ad.
6. Plaintiffs Anne and Walter Wright, who are black, saw the newspaper ad and called about the unit, reaching Mrs. Stein, and asked if the unit was available. Mrs. Stein said the unit was available and plaintiffs were granted an appointment to see the apartment.
7. That day plaintiffs drove to the Carroll Wood address and presented themselves as the couple who wanted to see the apartment. Mrs. Stein told them that the apartment was unavailable and so plaintiffs left.
8. On or about November 16, 1977, plaintiff Anne Wright again saw an advertisement for an apartment on Carroll Wood and called to inquire about the apartment. Mrs. Stein answered this call and said the apartment was available and to come see it. When plaintiffs arrived at the Carroll Wood address, they were again met by Mrs. Stein. At that time Mrs. Stein offered to show the apartment but stated that she had no authority to take any money, could not give a receipt, and that they would have to contact Sophos about the apartment. Plaintiffs declined the offer to show the apartment and left.
9. About November 16th, plaintiff Anne Wright contacted Hedy Epstein (a white woman), Executive Director of the Greater St. Louis Committee for Freedom of Residence, told her what had transpired in their two encounters with Mrs. Stein and that she thought they had suffered discrimination.
10. On or about November 16th, Ms. Epstein called Mrs. Stein and identified herself as director of Freedom of Residence and informed her that her actions could be violative *1118 of state and federal law prohibiting discrimination on the basis of race.
11. On or about November 18th, Ms. Epstein and another Freedom of Residence worker, Jocelyn Wilkins (a black woman) posed as prospective tenants and separately went to the Carroll Wood apartment. Both encountered Mrs. Stein who informed both of them that they would have to contact Ms. Sophos about the apartment. Apparently both were shown the defendant's apartment. At this point it appears that Mrs. Stein by her actions encouraged the availability of the apartment to Ms. Epstein (posing as Mrs. Walker) while discouraging the application of Ms. Wilkins (posing as Mrs. Jones) by telling Ms. Wilkins that she did not know Ms. Sophos' number whom she would need to contact about the unit. Ms. Epstein was given an application form for the apartment complex and Ms. Wilkins was not given such.
12. At some time after November 16, 1977, when Ms. Epstein called Mrs. Stein and accused her of discrimination and after Ms. Epstein had posed as Mrs. Walker and had seen the apartment and had shown an apparent interest in it, Mrs. Stein called Mabel Owen. Mrs. Stein told Mrs. Owen about what had transpired: the alleged discriminatory action taken by Mrs. Stein and the interest of Mrs. Walker in the apartment. Mrs. Owen said that it would be all right for Mrs. Stein to let Mrs. Walker have the apartment.
13. On November 18, 1977, Mrs. Stein called Mrs. Walker (Ms. Epstein) and told her that she had spoken with Mrs. Owen in Oklahoma and that she could have the apartment and should come out that evening and deposit two months' rent. Mrs. Walker (Epstein) later declined the apartment.
14. Defendant Mabel Owen's apartment was not rented until June of 1978.
15. At all times pertinent hereto plaintiffs Anne and Walter Wright were living with Walter Wright's mother in St. Louis. Plaintiffs did not rent an apartment in the St. Louis area from November 1, 1977 (their approximate arrival date in St. Louis) to April, 1978, some five months after the attempt to secure defendant's unit at Carroll Wood.

CONCLUSIONS OF LAW
1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1981 and 1982.
2. Plaintiffs' burden of proof in a housing discrimination case is the prima facie case. To establish a prima facie case "the plaintiff need prove no more than that the conduct of the defendant actually or predictably results in racial discrimination; in other words, that it has a discriminatory effect." United States v. City of Black Jack, Missouri, 508 F.2d 1179, 1184 (8th Cir. 1974), cert. denied, 442 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975).
3. Plaintiffs here have established a prima facie case of racial discrimination as a result of the disparate treatment accorded them in comparison with Ms. Epstein (Mrs. Walker), a white person, by Mrs. Stein.
4. Although Mrs. Stein was not the designated agent of defendant Mabel Owen to rent her apartment/condominium, defendant's apparent acceptance of Mrs. Walker (Ms. Epstein) as a tenant is sufficient to establish an agency relationship by conduct. Barefoot v. International Brotherhood of Teamsters, Chauffeurs and Helpers of America, 424 F.2d 1001 (10th Cir. 1970), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1971). Defendant Mabel Owen is therefore liable for the discriminatory acts of Mrs. Stein.
5. Plaintiffs will be awarded $100 in actual damages, taking into consideration emotional distress and humiliation shown. Smith v. Anchor Building Corporation, 536 F.2d 231 (8th Cir. 1976).
6. Punitive damages as a rule are disfavored in the law and are awarded only where willful, wanton, and/or malicious conduct can be shown. Such conduct on the part of defendant has not been shown and, accordingly, punitive damages will not be awarded. Marr v. Rife, 503 F.2d 735 (6th *1119 Cir. 1974); Jeanty v. McKey & Poague, Inc., 496 F.2d 1119 (7th Cir. 1974).
7. Plaintiffs will be awarded their costs in this action. Smith v. Anchor Building, supra.
8. Plaintiffs have requested $5,810 in attorney's fees under 42 U.S.C. § 1988 for 97 hours of work. The Court is of the opinion that $1,000 in attorney's fees is adequate for a six hour trial and the discovery and briefing for such a trial. Accordingly, $1,000 in attorney's fees for plaintiffs' attorneys will be awarded.