Ava **WILLIAMS**, Appellant,

v.

**TRANS WORLD AIRLINES, INC.**, Appellee.

Ava **WILLIAMS**, Appellee,

v.

**TRANS WORLD AIRLINES, INC.**, Appellant.

Nos. 80–2165, 81–1004.

United States Court of Appeals, Eighth Circuit.

Submitted July 21, 1981.

Decided Oct. 2, 1981.

Randall E. Hendricks (argued), Stinson, Mag & Fizzell, Kansas City, Mo., for appellee/cross appellant.

Sandra Weinlood (argued), William H. Pickett, Kansas City, Mo., for appellant/cross-appellee.

Before LAY, Chief Judge, STEPHENSON and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

This is an action under title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Ava Williams, a black, alleges that her discharge from employment with Trans World Airlines, Inc. (TWA) was the result of racial discrimination. TWA defended her discharge for alleged reasons of neglect of duty. The district court, the Honorable Scott O. Wright presiding, found

that Williams' discharge was in violation of both civil rights acts and awarded damages of $1,912.90, plus costs and $5,000 attorney's fees. The plaintiff appeals on the inadequacy of damages due to failure of the court to compensate for mental distress and from the attorney's fees award. The defendant cross-appeals on the grounds of insufficiency of evidence to sustain the award. We affirm in part and reverse in part.

*Facts.*

Williams was employed by TWA on April 25, 1976, as a probationary employee in the job classification of flight attendant. She continued serving the five-month probationary period in Kansas City upon completion of a student hostess training program on May 20, 1976. Throughout the probationary period Williams' written evaluations regarding job appearance, passenger service, and knowledge of safety regulations were favorable, but her encounters with supervisory personnel were less uncensured. On one occasion during the training period Williams' supervisor criticized her for looking bored during a class, but Williams explained that her expression was one of concentration, not of boredom. In June or July 1976, Williams' supervisor observed her in the airport wearing cut-off blue jeans while off duty and on personal business. The supervisor warned that Williams' attire was in violation of company policy, but Williams thought that no such policy existed and that the supervisor was joking. Subsequently, Williams' supervisor again found Williams dressed in cut-off blue jeans at the airport during off-duty hours while on personal business and reprimanded her; at Williams' request, the supervisor showed to her the TWA Front Line Handbook, dated May 1975, which states:

1. The general rules of conduct for in-flight attendants state, in pertinent part:
 5. Neglect of duty and insubordination will not be tolerated.
 16. All duties shall be performed in a professional and workmanlike manner.
 . . . .
 Violation of any of these regulations may result in disciplinary action ranging from

When not in uniform but at the airport conducting business, or deadheading, dress should be tastefully conservative. *Id.* at 6.

On July 17, 1976, following a "three-month achievement" seminar, Williams' supervisor and another supervisor conferred with Williams regarding apparent boredom during the seminar and the cut-off blue jeans incidents. The confrontation and discussion of her "attitude problem" angered Williams, and a third supervisor was called in to assist. Although Williams exhibited signs of feeling unduly harassed with the first two supervisors, she was calm and composed with the third. A verbal, and later written, warning ensued, stating that Williams must display exemplary conduct for the remainder of the probationary period and that any future incident indicative of an "attitude problem" might subject her to termination.

Finally, in September 1976, Williams was terminated as a result of a letter received by TWA from a passenger. The letter referred to other attendants by name, but referred to Williams as "the black stewardess," accusing her of "prostituting" with a "black passenger" during a six-hour grounding of an August 1, 1976, flight in Colorado Springs, Colorado, due to bad weather. Although the truth of the allegations was never investigated and substantiated, and the accusation of "prostituting" was not believed, Williams' supervisor and another supervisor, joined by the acting general manager and the head of labor relations for in-flight personnel, decided to terminate Williams based upon the customer letter. Williams' termination letter of September 2, 1976, stated that the reasons for termination were neglect of duty and failure to perform duties in a professional, workmanlike manner.[1] The proffered rea-

warning to discharge. The measure of discipline should correspond to the gravity of the offense as weighed by its effect on the Company as well as the seniority and work record of the employee involved.
TWA In-Flight Service Handbook 4.01–4.03 (Rev. July 1, 1975; Jan. 16, 1976).

son for termination without investigation was alleged to be based upon insufficient time to investigate before Williams' probationary term ended; if the investigation period extended past the probationary period, there would be union involvement in termination proceedings.

Upon exhaustion of her administrative remedies, Williams brought this action in the district court under title VII and section 1981, alleging termination of employment due to racial discrimination. The district court found that, although Williams failed to prove a case of disparate treatment, she had, nevertheless, proven sufficient facts to establish a prima facie case of racial discrimination. The district court found that the direct evidence which served as the nexus between Williams' termination and her race was the grossly exaggerated "passenger complaint letter written with strong racial overtones" which prompted the discharge without verification of the facts. The court held TWA liable for the actions that it took in reliance upon the unverified accusations. The court also held that TWA failed to rebut Williams' prima facie case and that the discrimination was intentional under 42 U.S.C. § 1981. *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The court awarded Williams reinstatement, back wages, lost fringe benefits, costs, and reasonable attorney's fees. In doing so it denied damages for mental distress, however, finding Williams' testimony "entirely credible" but "inadequate to base an award of damages upon." In addition, the court reduced plaintiff's claim for attorney's fees on the

basis that plaintiff's counsel had failed to properly prepare his case. Williams appeals on the attorney's fees and mental distress issues; TWA cross-appeals on the grounds that Williams' proof of racial discrimination cannot be founded upon a theory other than disparate treatment or disparate impact; additionally, TWA urges that the district court misapplied the burden of proof under *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

*The Prima Facie Case.*

We discuss TWA's cross-appeal first.

██ The plaintiff in a title VII case possesses the ultimate burden of persuasion and the intermediate burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). A prima facie case of discrimination based upon a theory of disparate treatment is succinctly set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).[2] In a disparate treatment case the plaintiff's initial burden is basically to show actions "taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575–76, 98 S.Ct. 2943, 2948–49, 57 L.Ed.2d 957 (1978); *accord, International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396

---

2. The flexible guidelines for proof of a prima facie case of disparate treatment are now well known:

> (i) that [plaintiff] belongs to a racial minority; (ii) that [plaintiff] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite . . . qualifications, [plaintiff] was rejected; and (iv) that, after . . . rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824.

A prima facie case of discrimination based upon other theories is, of course, possible un-

der title VII. Other theories include: (i) disparate impact; *see Griggs v. Duke Power Co.*, 401 U.S. 424, 429–33, 91 S.Ct. 849, 852- 54, 28 L.Ed.2d 158 (1971), in which a facially neutral policy or practice operated to adversely affect a protected class; and (ii) pattern or practice; *see International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 60, 97 S.Ct. 1843, 1866–67, 52 L.Ed.2d 396 (1977), where the denial of rights is repeated, routine, or of a generalized nature. *See also Setser v. Novack Inv. Co.*, 638 F.2d 1137, 1147 (8th Cir. 1981), regarding employer retaliation following filing claim for racial discrimination with EEOC.

(1977); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n.13, 93 S.Ct. 1817, 1824 & n.13, 36 L.Ed.2d 668 (1973).

The *McDonnell Douglas* test can be made applicable to discharge cases as well as hiring cases. *See Henry v. Ford Motor Co.,* 553 F.2d 46, 48 n.3 (8th Cir. 1977); *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094 nn.6 & 7, 67 L.Ed.2d 207 (1981); *Mosby v. Webster College,* 563 F.2d 901, 902 & n.2 (8th Cir. 1977). Although this court has held that, to proceed under a disparate treatment theory, a plaintiff must prove differences in treatment and discriminatory motive, it has also recognized that what constitutes a prima facie case of employment discrimination necessarily varies according to the facts. *Meyer v. Missouri State Highway Comm'n,* 567 F.2d 804, 807–08 (8th Cir. 1977), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1888, 56 L.Ed.2d 395 (1978).

 In the present case, the district court found that there was a violation of title VII in that plaintiff was discharged for racial reasons. Nonetheless, the court found that the plaintiff had not successfully proven a case of disparate treatment since she had failed to show a different standard of treatment for black employees and similarly situated white employees. An interpretive analysis of the district court's opinion does not, however, compel us to accept TWA's argument that, since the court found plaintiff had failed to prove disparate treatment, it is entitled to a judgment for the defendant. It appears to us that the trial court's rejection of plaintiff's theory of disparate treatment is based on the limited reasoning that documentary proof obtained from TWA did not show that black employees were treated any differently than whites.[3] However, proof of a prima facie case of disparate treatment is not so confined. If a black person is discharged with discriminatory intent by reason of his race, this establishes proof of disparate treatment. *See Furnco Constr. Co. v. Waters,*

438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). We cannot accept that the district court's semantical error requires a different result. The question before us is whether the proof was sufficient to sustain plaintiff's claim of racial discrimination. We find that, under the clearly erroneous rule, Fed.R.Civ.P. 52(a), the trial court's findings of racial discrimination are amply supported by sufficient and substantial evidence.

*Rebuttal of Prima Facie Case.*

 The court below held that TWA failed to rebut Williams' prima facie case of discrimination. TWA's rebuttal evidence focused primarily on occurrences other than the complaint letter. The district court stated:

> Generally, in individual discharge cases, a defendant rebuts a plaintiff's prima facie case by showing a legitimate, nondiscriminatory reason for firing the plaintiff. This standard is inapplicable in this case, however, because plaintiff's termination letter dated September 2, 1976 makes it clear that plaintiff was terminated on the basis of the charges made in Mrs. De-Vitt's letter, i. e., for neglect of duty and for failure to perform her duties in a professional and workmanlike manner. This letter forecloses defendant from now asserting that plaintiff was terminated for reasons other than this passenger complaint letter, and only evidence relating to this circumstance would be relevant in rebutting plaintiff's prima facie case.

*Williams v. Trans-World Airlines, Inc.,* 507 F.Supp. 293, 302 (W.D.Mo.1980).

The court continued by suggesting that the defendant could have rebutted with evidence that the complaint letter was true, thereby negating the inference that the letter was racially motivated, or by evidence

---

**3.** A great deal of evidence of white employees with more serious infractions but less perfunctory dismissals was adduced at trial. Since the decision can be affirmed on the grounds on which it was decided, it is not necessary to review this evidence.

that it either investigated the letter prior to acting or that it had a compelling business necessity preventing investigation. TWA urges that the district court, in so holding, erroneously placed the burden of persuasion upon the defendant in direct contradiction with *Burdine*. Once again, the district court's choice of words is unfortunate, especially in the statement that rebuttal by articulation of a legitimate, nondiscriminatory reason is inapplicable to this case. The *Burdine* standard for rebuttal is clearly applicable; the ultimate burden of persuasion remains upon plaintiff. However, once again our analysis of the trial court's opinion is that the trial judge was merely holding that the true reason for discharge was stated in Williams' termination letter. The court then asserted that TWA's proffered defense of neglect of duty was not true. This we find to be equated with a finding that TWA's defense was pretextual. *See Womack v. Munson*, 619 F.2d 1292, 1298–99 (8th Cir. 1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). The court's rejection of TWA's rebuttal evidence appears to be based upon the credibility or weight of the evidence; some explanation or justification for the previously stated reason for dismissal, not different reasons, was in order to establish a "legitimate, nondiscriminatory reason" for its actions sufficient to withstand a motion for summary judgment. In sum, although the court erred in stating that the *Burdine* test for rebuttal of a prima facie case is inapplicable, its finding that the defendant failed to rebut the plaintiff's prima facie case is not clearly erroneous. Fed.R.Civ.P. 52(a). *See also O'Brien v. Continental Ill. Nat'l Bank & Trust Co.*, 593 F.2d 54, 65 (7th Cir. 1979); *Lum Wan v. Esperdy*, 321 F.2d 123, 126 (2d Cir. 1963).

*Damages.*

We turn now to Williams' appeal. The plaintiff argues that the district court erred in denying damages for mental distress because it applied the wrong legal standard in requiring proof of out-of-pocket losses by way of medical testimony and bills in order to establish damages for mental distress.

■ One of the purposes of a title VII award is to make a person "whole" for injuries caused by illegal employment discrimination, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *DiSalvo v. Chamber of Commerce*, 568 F.2d 593, 598 (8th Cir. 1978); and the award of compensatory damages for humiliation or emotional suffering is an appropriate remedy for deprivation of a constitutional right. *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636 (7th Cir. 1974); *see Carey v. Piphus*, 435 U.S. 247, 264–67, 98 S.Ct. 1042, 1052–54, 55 L.Ed.2d 252 (1978).[4] The question before us, however, is what is the proper legal standard for proof of mental distress. This court has held that damages for emotional harm are to be presumed where there is an infringement of a substantive constitutional right. *Herrera v. Valentine*, 653 F.2d 1220 at 1230 (8th Cir. 1981); *accord, Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1978); *contra Shuman v. Standard Oil Co.*, 453 F.Supp. 1150, 1154 (N.D. Cal.1978) (*actual* proof of emotional harm necessary); *see generally* Note, *Damage Awards for Constitutional Torts: A Reconsideration After Carey v. Piphus*, 93 Harv. L.Rev. 966, 968, 976–77 and nn.9, 68–69 (1980). Assuming, arguendo, that actual damages must be proven for recovery for mental distress, it appears that specific proof of out-of-pocket losses or medical testimony, although relevant, is not necessary.

---

4. Limitation of a compensatory damages award in a civil rights case to out-of-pocket expenses, denying recovery for emotional distress and humiliation, has been held improper. *Jeanty v. McKey & Poague, Inc.*, 496 F.2d 1119, 1121 (7th Cir. 1974); *see Herrera v. Valentine*, 653 F.2d 1220 at 1227–28, 1230–31 (8th Cir. 1981); *Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 236 (8th Cir. 1976); *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977); *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 121 (1st Cir. 1977); *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636–37 (7th Cir. 1974); *Wright v. Owen*, 468 F.Supp. 1115, 1118 (E.D.Mo.1979); *Shuman v. Standard Oil Co.*, 453 F.Supp. 1150, 1154 (N.D.Cal.1978); *Aumiller v. University of Delaware*, 434 F.Supp. 1273, 1310 (D.Del.1977); *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 142 (W.D.Okl. 1977).

*See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974) (proof of mental distress in libel action not limited to out-of-pocket loss; need not be evidence which assigns actual dollar value to the injury); *see also Carey v. Piphus*, 435 U.S. 247, 258, 267 and n.25, 98 S.Ct. 1042, 1049, 1054 and n.25, 55 L.Ed.2d 252 (1978) (application of common law tort principles to civil rights damages for mental distress). We have held that the plaintiff's own testimony may be solely sufficient to establish humiliation or mental distress. *See Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 236 (8th Cir. 1976); *accord, Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1978); *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636 (7th Cir. 1974); *Shuman v. Standard Oil Co.*, 453 F.Supp. 1150, 1154 (N.D.Cal.1978); *contra Stolberg v. Members of Bd. of Trustees for State Colleges of Conn.*, 474 F.2d 485, 489 (2d Cir. 1973), *later app.*, 541 F.2d 890, *cert. denied*, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 181 (1976). Although it is admittedly difficult to place a value upon the resulting emotional injury from the deprivation of a constitutional right, the common law has historically recognized a reasonable, and sometimes substantial, sum of damages for mental distress. *See* D. Dobbs, *Remedies* 528–30 (1973). *See also Richardson v. Communications Workers of America*, 443 F.2d 974, 979, 983–85 (8th Cir. 1971), *cert. denied*, 414 U.S. 818, 94 S.Ct. 38, 38 L.Ed.2d 50 (1973) ($92,000 damages awarded on remand; *see* 486 F.2d 801, 805–07 (8th Cir. 1973)). Since the district court found an actual injury, but denied recovery of damages for mental distress for failure to adduce evidence of the actual dollar value of the injury, we remand for a determination of damages for mental distress.

*Attorney's Fees.*

Plaintiff's counsel asserts entitlement to an award based upon approximately 450 hours at a rate of $90.00 per hour for attorney's fees as the "prevailing party" in this civil rights action.[5] The district court al-

lowed an award based upon 100 hours at $50.00 per hour, or $5,000. The trial court, in limiting the award of attorney's fees, stated:

In this case, plaintiff's attorney is claiming fees for approximately four hundred and fifty hours (212.20 hours for himself; 5.60 hours for an associate; 226.15 hours for a paralegal). The Court finds that this figure is unreasonable and is not justified by the record and does not accurately reflect the time and labor required to perform the services plaintiff's counsel actually performed. Very little discovery was engaged in. Plaintiff's counsel made no attempt to interview any of defendant's witnesses. He took no depositions and failed to attend a deposition taken by defendant. Very little legal research was performed. Plaintiff's counsel failed to prepare a trial brief in direct opposition to the Court order of May 7, 1980, directing the parties to submit trial briefs prior to trial. These and other considerations convince this court that plaintiff's counsel's estimate of the number of hours required is unreasonable. This Court finds that one hundred (100) hours were reasonably spent in the trial preparation of this case.

Plaintiff's attorney has represented to the Court that his customary fee is ninety dollars ($90.00) per hour, but the Court finds that a reasonable hourly fee in this case is fifty dollars ($50.00) per hour. The following factors have been considered in reaching this conclusion: the novelty and difficulty of the questions; the skill required to perform the legal services properly; the contingent nature of the fee; the amount involved and the results obtained; the experience, reputation and ability of the attorney; and the nature and length of the professional relationship with the client.

Because of the marked discrepancy between plaintiff's counsel's customary fee and the fee set by the Court, further

---

**5.** Section 2000e–5(k) of title 42 authorizes award of reasonable attorney's fees to the prevailing party in a title VII action; 42 U.S.C.

§ 1988 authorizes award of reasonable attorney's fees to the prevailing party in, *inter alia*, a title VI or a section 1981 action.

elaboration is necessary. When the Court considers the experience and ability of an attorney, it must also consider the diligence of the attorney in getting his client's case to trial and also the adequacy of the representation actually given.

Discovery had closed in this case for one year before plaintiff's attorney requested that it be reopened. At that time, the Court generously allowed an extra one hundred and twenty (120) days for further discovery, at the end of which time trial was scheduled. Plaintiff's attorney then moved for a continuance of trial because he had not completed discovery in a case which was nearly three years old.

As far as adequacy of representation is concerned, there are two glaring instances in this case where representation was not only inadequate but non-existent. Prior to trial, defendant scheduled the deposition of Mrs. Margo DeVitt, the passenger who wrote the complaint letter against plaintiff which resulted in her termination. Plaintiff's attorney declined to attend. This deposition was perhaps the most crucial phase in plaintiff's case, yet her attorney waived plaintiff's right to cross-examination because, as he explained to the Court, he did not want to listen to that woman's self-serving statements. The other instance of inadequate representation was plaintiff's attorney's failure to submit a trial brief, even though the Court had ordered trial briefs in its order dated May 7, 1980. Plaintiff's attorney chose to interpret this order as "discretionary" and allowed the Court to proceed to trial with only the defendant's view of the applicable law to guide it.

In light of these circumstances, the Court finds that an award of attorney's fees in the amount of $5,000 is reasonable.

*Williams v. Trans-World Airlines, Inc.,* 507 F.Supp. 293, 305–06 (W.D.Mo.1980).

On appeal, plaintiff's counsel urges that the trial court erred in failing to award attorney's fees for time involved in their attempt to prove disparate treatment with documentary evidence. In this regard we have stated: "Attorney's fees for a claim which is reasonably calculated to advance a client's interests should not, however, be denied solely because that claim did not provide the precise basis for the relief granted." *Brown v. Bathke,* 588 F.2d 634, 637 (8th Cir. 1978). *See also Johnson v. Nordstrom-Larpenteur Agency, Inc.,* 623 F.2d 1279, 1282 (8th Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *Oldham v. Ehrlich,* 617 F.2d 163, 168 n.9 (8th Cir. 1980).

The district court's analysis does not support plaintiff's counsel's contention. Its finding of a reduced fee is based on: (1) the determination that 450 hours were unreasonable and not justified by the record and do not accurately reflect the time and labor required to perform the service actually performed; and (2) the determination that a reasonably hourly fee in the case was $50.00 per hour. In addition, in making this award, the trial court found specific instances where the performance of plaintiff's counsel was totally lacking.

█ In the present case, plaintiff stipulated that the actual damages in dispute were less than $1,000. We agree with the trial court that the claimed hours, to wit, 450, to prepare this case were totally unreasonable and unnecessary. A fair attorney's fee must be realistic and bear some reasonable relationship to the right to be vindicated and the damages sought. In addition, the trial court's evaluation of plaintiff's counsel's services rests upon personal observation of performance. Under the circumstances, we fail to find that the trial court abused its discretion in awarding attorney's fees of $5,000.

*Damages Award.*

█ The district court found that the plaintiff succeeded under both title VII and section 1981, and apparently doubled the damages award. This is clearly erroneous, as damages are only recoverable once for a transaction involving two violations of law. *See Pappas v. Moss,* 303 F.Supp. 1257, 1281 (D.N.J.1969).

*Conclusion.*

The judgment of the district court as to the award of attorney's fees is affirmed. The finding of liability on the part of TWA is affirmed; however, the judgment is reversed, and the cause is remanded for a determination of damages for mental distress. The judgment should also be amended to reflect a single recovery of actual damages.