**Bernice SILINZY, Plaintiff,**

**v.**

**The VISITING NURSE ASSOCIATION OF GREATER ST. LOUIS, Defendant.**

**No. 90–1278C(5).**

United States District Court, E.D. Missouri, E.D.

Nov. 21, 1991.

---

Doris G. Black, St. Louis, Mo., for plaintiff.

Timothy K. Kellett, Joan Z. Cohen, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, Mo., for defendant.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff originally filed a four-count complaint asserting claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The § 1981 claims (Counts III and IV) were dismissed by this Court on July 22, 1991. The remaining Title VII claims, contained in Counts I and II, remain. Count I alleges discrimination in plaintiff's job conditions and her eventual termination of employment. Count II alleges retaliation for filing an EEOC complaint regarding her initial layoff from employment with defendant. Both counts allege racial discrimination as the real basis for defendant's action. Defendant was granted leave to file a motion for summary judgment on October 22, 1991. As of today's date, plaintiff has not responded.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

Defendant VNA is a home health care services provider in the metropolitan St. Louis area, including Jefferson County, Missouri. These services are provided by registered nurses, licensed practical nurses, and home health aides. Plaintiff Silinzy was originally hired by VNA in September, 1976.

VNA was a growing and profitable business until the latter part of 1984 when it began to suffer some financial setbacks. Increased competition resulted in losses of patient referrals. Between January 1985 and September 1987, a total of forty-five white employees and thirty-eight black employees were permanently laid off. Recall of these employees was not anticipated.

During this period of lay-offs, a higher percentage of white employees than black employees were laid off in relationship to the percentage of blacks and whites in the correlating job classifications.

In late September, 1987 Susan Pettit, President of VNA, circulated a memorandum outlining the financial difficulties of VNA and informing all employees, including the plaintiff, of the need for budget and staff (field and administrative) cutbacks. In October, 1987 VNA was forced to lay off two additional home health aides; one of these was the plaintiff. In accordance with its Reduction in Force policy, VNA reviewed the records of each of the home health aides, comparing their evaluations over the most recent three-year period of employment. Plaintiff had one of the two lowest ratings of home health aides in the geographic areas in which layoffs were contemplated due to patient loss.

Ms. Silinzy was laid off on October 2, 1987. On October 6, 1987 Ms. Silinzy filed an EEOC complaint against defendant alleging that she was fired due to race. The EEOC failed to substantiate her allegations and subsequently issued a right to sue letter. No lawsuit was ever filed by plaintiff against defendant.

In April, 1988 a home health aide position became available. The position was for a "floater"; assignment to various geographic areas as needed. Although VNA's standard policy was not to recall any employee laid off for more than six months, VNA decided to recall plaintiff and offer her this "floater" position. The nature of the position was explained to Ms. Silinzy and she accepted the position. From April, 1988 to June, 1988 plaintiff worked in various geographic areas as a "floater" without any regular supervision. In April, 1988 plaintiff was assigned to work on a regular basis in Zone 4 (Jefferson County, Missouri) due to increased patient load in that area. As a regular home health aide in Zone 4, plaintiff was supervised by Joan Velton, a registered nurse and a Patient Service Manager for VNA.

Beginning in June, 1988 VNA began to receive several complaints from patients and staff members regarding Ms. Silinzy's job performance. On June 14, 1988 Joan Velton and Trina Stephens, the Director of Clinical Services, met with the plaintiff to discuss the complaints VNA had received. In the meeting, job requirements and Ms. Silinzy's job performance were discussed. Plaintiff acknowledged the problems but also expressed her belief that the nurses were "out to get her". Ms. Velton and Ms. Stephens explained to plaintiff that they believed that the nurses were simply concerned about the welfare of their patients. Plaintiff agreed to try to rectify her shortcomings.

However, patient complaints and performance problems continued. Ms. Silinzy failed to care for patients as required, failed to follow established VNA procedures regarding the scheduling of home visits, failed to make several home visits, and falsely stated on a report about the care given to a particular patient. On July 7, 1988 Joan Velton and Theodora Johnson, Vice-President of Clinical Services met with plaintiff. Plaintiff admitted to the problems discussed. A Corrective Disciplinary Review Form was completed covering the July 7th meeting, but plaintiff refused to sign it. She stated that she disagreed with the contents of the report but refused to elaborate as to what she thought was incorrect in the report.

Complaints concerning Ms. Silinzy's job performance continued throughout August, 1988. One patient complained of rough treatment by Ms. Silinzy. On August 22, 1988 plaintiff failed to follow VNA procedures by failing to call in for her assignments in a timely manner. This infraction was again brought to plaintiff's attention. Ms. Velton was surprised that after so many years of employment with VNA, plaintiff suddenly was violating long-standing established procedures, so she scheduled a field observation of Ms. Silinzy's performance. Plaintiff was told in advance of the field observation. On at least one occasion, Ms. Velton had to assist plaintiff with patient care because Ms. Silinzy was not tending to the patient as required for a home health aide with her experience. The Field Observation Report generally rated

plaintiff's job performance as unsatisfactory. This rating and the increasing number of complaints concerned VNA officials. Finally, on August 26, 1988 a registered nurse (unaffiliated with VNA) called to complain about Ms. Silinzy's performance at a patient's home. The nurse complained that plaintiff refused to call an ambulance while the nurse gave emergency care to the patient. The nurse stated that not only did plaintiff refuse to make the call but was rude and belligerent. Ms. Velton, Ms. Johnson, Ms. Stephens and Ms. Sharon Martin, VNA's Personnel Director, met to discuss plaintiff's continued employment. They reached a tentative agreement to terminate Ms. Silinzy's employment because of continuing poor performance, increasing complaints, and what they believed to be plaintiff's general lack of concern about improving her attitude and job performance. Subsequently, Ms. Velton and Ms. Stephens met with plaintiff to discuss the continuing problems. Ms. Silinzy was unresponsive to their inquiries and generally displayed a lack of interest in changing her ways or in keeping her job. As of August 26, 1988 Ms. Silinzy was terminated.

On August 29, 1988 plaintiff filed a second EEOC complaint against defendant alleging retaliation. Subsequently, the EEOC issued a right to sue letter.

The Court has reviewed legal memorandum, affidavits and exhibits submitted by the defendant in support of its motion for summary judgment. Defendant has met its initial burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). Once the defendant met its burden, the burden shifted to plaintiff to "set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute on [those] issue[s]." *City of Mt. Pleasant v. Associated Electric Coop.*, 838 F.2d 268, 274 (8th Cir.1988). Since plaintiff failed to oppose defendant's motion, the Court accepts defendant's account of the facts and now will apply the relevant law.

■ Plaintiff Silinzy has failed to establish a prima facie case of racial discrimination under *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Williams v. T.W.A.*, 660 F.2d 1267 (8th Cir.1981). The well-established test in a Title VII racial discrimination discharge case requires a plaintiff to show: 1) [s]he belongs to a racial minority, 2) [s]he was qualified for the job and was performing the job adequately, 3) [s]he was discharged, and 4) [s]he was replaced by a non-minority person to perform the same job. *Figgous v. Allied/Bendix Corp., Allied–Signal*, 906 F.2d 360, 362 (8th Cir. 1990); *Legrand v. Trustees of the University of Arkansas*, 821 F.2d 478, 480 (8th Cir.1987), *cert. denied*, 485 U.S. 1034, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988). Although the burden of production shifts, the burden of persuasion, i.e. sufficient evidence to create an inference of racial discrimination, always remains with the plaintiff. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Legrand*, at 480.

Defendant has produced ample evidence that plaintiff was not performing her job adequately. Numerous complaints regarding her negative attitude and poor job performance, from a variety of sources, are documented. Although plaintiff may have felt that "the nurses are out to get me", she provides no evidence to support this contention. The evidence instead shows that patients, patients' families, and medical personnel unaffiliated with VNA filed most of the complaints about plaintiff with VNA. She was counseled and warned to change her ways on at least two occasions, but for reasons unknown, she did not. Plaintiff has failed to provide the Court with any evidence to show the plaintiff's discharge was racially motivated. Instead, the proffered evidence supports defendant's contention that plaintiff was not treated any differently than any other employee and that plaintiff's poor job performance was the reason for her discharge.

■ Plaintiff has failed to establish a prima facie case for retaliatory discharge. In order to establish a prima facie case for retaliatory discharge, a plaintiff must show: 1) [s]he was engaged in a protected

activity, 2) the defendant employer was aware of the protected activity and subsequently discharged the plaintiff, and 3) "the discharge followed the protected activity so closely as to justify an inference of retaliatory motive." *Figgous*, at 361; *Womack v. Munson*, 619 F.2d 1292, 1296 n. 6 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

Plaintiff filed her first EEOC complaint in October, 1987. She was rehired as a "floater" by VNA in April, 1988. She was permanently assigned a home health aide position in Zone 4 in June, 1988. Plaintiff was discharged on August 26, 1988.

Plaintiff was discharged in August, 1988, almost one year after she filed her EEOC complaint. In the meantime she had been rehired and reinstated in her original job classification, although in a different geographic area. The evidence supports defendant's assertion that plaintiff's assignment to Zone 4 was strictly due to the increased patient load in that area. Plaintiff provides no evidence to the contrary. Furthermore, plaintiff's discharge in August 1988 is not close enough in time to plaintiff's EEOC complaint in October 1987 to raise an inference of retaliatory motive. *See, Figgous*, at 362.

The Court will grant defendant's motion for summary judgment. This case is dismissed with each party to bear its own costs.