[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Pratt and Whitney/United Technologies, appeals from a final decision of September 21, 1999, rendered by a hearing officer for the defendant, Commission on Human Rights and Opportunities ("CHRO"), in favor of the defendant, Gale Nestor. The plaintiff's appeal is authorized CT Page 2555 by General Statutes §§ 46a-94a and 4-183 of the Uniform Administrative Procedure Act ("UAPA"). For the reasons set forth below, the court finds the issues in favor of the defendants.
The court summarizes the comprehensive factual findings made by the hearing officer in its September 21, 1999 decision as follows. (Return of Record ("ROR"), Volume 1, Item 1, pp. 9-25.) Gale Nestor, a woman, is a resident of Woodstock, Connecticut. In November of 1973, the plaintiff hired her as an Engine Lathe Operator in Labor Grade 8 at the plaintiff's facility in East Hartford. In 1976, she was promoted to Labor Grade 7. In 1979, after successfully completing a training course, Nester was transferred into Master Mechanics Inspection, Department 37, into the position of Tool Inspector C, Labor Grade 6. In 1981, she was promoted to Tool Inspector B, Labor Grade 4. She was the only woman at that time to hold that position in Department 981, Quality Assurance. In 1984 and 1985, several inspectors were promoted to Labor Grade 2 but Nestor was the only inspector not promoted.
In 1987, while under the supervision of one Kent Parent in the metrology lab, Nestor learned that Parent was building a case to support her termination. There were a series of disciplinary warnings filed against Nestor. Nestor responded with union grievances, removing the warnings from her file.
In 1988, Nestor became subject to supervision by Joseph Burns. Until she complained to the department head above Burns, she was not permitted to work on certain machinery. Burns told her he would not assign her to the machines because she was too large and awkward to do that kind of thing. and that she would break the machine. Burns treated the females he worked with differently than the males. Burns engaged in casual conversation most frequently with the men in the department and did not speak casually to the women unless he was telling them something about the work they were doing or unless they initiated the conversation. Burns' attitude towards women was typical at Pratt and Whitney, it was a male atmosphere. Burns saw dirty jokes and lewd pictures circulate around the Department 981 shop floor. Most males at Pratt and Whitney had a standard practice of circulating the lewd jokes and cartoons amongst themselves.
After 1990, Nestor had a series of incidents with a co-worker, Benjamin Elmore. The first incident occurred when Nestor exited her work station to speak to Burns. Elmore came out of this area at the same time and Elmore waived the middle fingers of both of his hands at Nestor, gesturing one finger into the other hand. Nestor told Elmore to stop. She also told Burns, who was nearby, about Elmore's actions, but nothing was done about this. CT Page 2556
About a month later, Elmore made a comment to Nestor which she took to be a reference on his part to male genitalia. She left the room and found Burns. After reporting what had happened to Burns, Burns made an appointment with personnel for her. The personnel officer took no report on the complaint, but advised Nestor to report further incidents to internal security.
A third incident occurred a month later. While Nestor was talking to a "lead man" about a problem with a machine part, Elmore was standing nearby. As the lead man studied her problem, Nestor looked up. Elmore made direct eye contact with Nestor, pulled his pants from his waist and stuck his hand down his pants to his elbow. He also made another genitalia reference. Nestor reported this to the lead man and later to Burns. Burns then sent her to internal security where she made a statement. When she returned from giving the statement, Nestor saw that a vulgar cartoon had been left on her tool box.
On November 9, 1990, Nestor met with a personnel officer who informed her that the investigation into Elmore's conduct was "over." Burns gathered the staff of Nestor' s department and told them about the company's policy against pornographic cartoons and pictures. He also told them not to discriminate or harass. He used the example of not harassing persons because of their religion. The meeting was brief, held without notice, and was over before Nestor knew of it (she was in the bathroom at the time).
The plaintiff realigned its jobs in 1991. Nestor was upgraded to a Labor Grade 2. There were, however, other higher level inspector positions made at the same time. Those inspectors who had been promoted to Labor Grade 2 in the 1980's, before complainant, were promoted to Labor Grade 1 as a result of the job re-design.
On July 27, 1992, a major incident again occurred between Elmore and Nestor. The time clock was located adjacent to a rack on which cards and paperwork identifying the particular jobs the employees were working on were kept. Burns' office was about 34 feet from the time clock, partially obscured by a cabinet. To clock out his or her work, the employee would first have to press the "enter" button and then swipe his or her badge card down through a vertical card swipe.
On July 27, 1992, at 11:45 P.M., Nestor approached the time clock where Elmore and one Grous were talking. Nestor stood behind Richard Grous, the lead man, and waited for him to finish. Grous walked away from the time clock, and Nestor stepped forward. She stepped up to the time clock and punched the enter button and started to swipe her identification card through the vertical card swipe slot. When Elmore saw Nestor at the CT Page 2557 clock, he said, "Oh no you don't" and went to the clock. He reached across the front of Nestor and pushed up against her as he pushed her right hand holding her identification away from the card swipe and stopped the punch. He continued repeatedly to push the cancel button as Nestor continued to try to operate the time clock.
As Elmore continued to press his body against Nestor, Nestor felt offended and very uncomfortable with Elmore's body pressed up against hers. She yelled very loudly, "Get away you pervert. Get off me you pervert." Elmore broke away for a minute, but then resumed contact with the left side of Nestor's body. She again yelled at him to get physically off her body. This time he did not move away. When pushing did not work, she kicked at Elmore. Elmore never indicated that Nestor had hurt him or that he was in any way injured.
Grous then told Burns about the problem. Burns stood up, looked over at the occurring incident, and headed over to the time clock. Burns directed his comments to Nestor only, saying that it was not worth losing your job over and that they were acting like kids. Eventually, after Nestor remarked, Burns stepped back and addressed both Nestor and Elmore together.
Burns turned the matter over to internal security for an investigation. Burns refused to talk to Nestor during the investigation period, but did talk fully to Elmore. After the internal security report, Burns and his supervisor Martin Berr decided that Nestor was the aggressor. Burns recommended retaining Elmore and terminating Nestor. According to Burns, a woman has the right to defend herself from a man who presses his body up against hers, but she may not if she is physically up close to the man and knows that he is only fooling around.
Under the plaintiffs policy, a case-by-case determination has to be made when considering when the use of force is self defense and when it is fighting. Fighting is grounds for termination. Pratt's general notice regarding general rules regarding workplace conduct, dated January 22, 1992, also stated that there was an "absolute prohibition of any behaviors which are contrary to common decency or morality or which are liable to incite or provoke such conduct." (ROR, Volume 1, Item 1, p. 25.)
Berr decided to accept Burns' recommendation that Nestor be terminated for fighting. She was in fact given notice of termination by Burns on September 2, 1992, at the end of her work shift. After a grievance was filed and processed, Nestor returned to work on February 26, 1993. Elmore only received a one-day suspension for his involvement in the time clock incident. CT Page 2558
Based on these factual findings, the hearing officer decided that Nestor had established a prima facie case of gender discrimination. The hearing officer accepted the plaintiff's non-discriminatory reason, but concluded that Nestor had met her burden of proving gender discrimination by showing that the plaintiff's reason was "pretextual." He ordered damages in a stipulated amount to be paid to Nestor. (ROR, Volume 1, Item 1, pp. 27-30.) This appeal followed.[1]
Pratt identifies three issues in this appeal. The first is that the hearing officer erred in concluding that Nestor was "similarly situated" to Elmore so that a finding of a prima facie case might be made. The second is that there was a lack of substantial evidence that gender bias occurred. Finally, the plaintiff objects to the admission into evidence of the incidents between Nestor and Elmore occurring prior to July 27, 1992. In evaluating these claims the court is guided by the substantial evidence test.
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v.DPUC, 247 Conn. 95, 117-18 (1998).
The plaintiff, CHRO and Nestor agree that the applicable test for a disparate treatment case is set forth in McDonnell Douglas Corp. v.Green, 411 U.S. 792 (1973)[2] and Ann Howard's Apricot's Restaurant v.CHRO, 237 Conn. 209 (1996). Under this test, the plaintiff must establish CT Page 2559 a prima facie case by a preponderance of the evidence. In order to establish a prima facie case of discrimination, the plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position held; (3) she was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class.[3]
The plaintiff contests the hearing officer's finding that Nestor met the fourth requirement of a prima facie case, alleging that Nestor was not "similarly situated" to Elmore, who was treated differently. The prima facie case requirement here is that the two parties of different gender in question be "similarly situated in all material respects."Shumway v. UPS, 118 F.3d 60, 64 2d 1997); Norville v. Staten IslandUniversity Hosp., 196 F.3d 89, 96 (2d Cir. 1999) ("The party treated differently must have engaged in conduct similar to the plaintiff's"). The case of Ward v. Proctor Gamble Products Co., 111 F.3d 558 (8th Cir. 1997) found that an employee was not similarly situated to the supervisor whom she slapped during a confrontation. See also Morgan v.Massachusetts General Hosp., 901 F.2d 186 (1st Cir. 1990) (employee was not similarly situated as he was the aggressor). But the Eighth Circuit subsequently cautioned that the test was not so rigid that parties must be conducting "the same offense" to be similarly situated and that the trial court must look beyond labels in making its conclusion. Lynn v.Deaconess Medical Center-West Campus, 160 F.3d 484, 488 n. 5 (8th Cir. 1998).
Based on the above-cited cases, the court concludes that there is substantial evidence to support the finding of the hearing officer that Nestor met the fourth prong of the prima facie test. The record indicates that both Nestor and Elmore were inspectors, with the same supervisor, and subject to the same standards for performance evaluation and discipline. The confrontation at the clock, according to Elmore, began when Nestor cut in line. (ROR, Volume 9, Item 128, p. 1473.) According to Nestor, the confrontation began when Elmore pushed her hand off the vertical slot and said, "Oh no you don't." (ROR, Volume 5, Item 91, pp. 665-66.)
Nestor took offense at Elmore's pushing up against her. (ROR, Volume 6, Item 92, p. 754.) Grous described the incident as both pushing against each other. (ROR, Volume 9, Item 131, p. 1484.) In any event, there was clearly a pushing and shoving incident at the clock; if Elmore pushed more and did not strike Nestor and Nestor elbowed and tried to kick Elmore, all this should not detract from the fact that they were equally at fault. In other words, they were "similarly situated."
Since the court has found that the hearing officer correctly concluded CT Page 2560 that Nestor satisfied the "prima facie" case requirement of McDonnellDouglas and Ann Howard's, the court must next look to see whether Pratt articulated a legitimate, nondiscriminatory reason for Nestor's termination. McDonnell Douglas Corp. v. Green, supra, 411 U.S. 804; AnnHoward's Apricot's Restaurant v. CHRO, supra, 237 Conn. 225. Here, the reason given was the plaintiffs policy on fighting in the workplace. Neither CHRO nor Nestor have denied that this is in general a legitimate reason for termination. Therefore, the burden would then shift to Nestor to prove that the reason advanced by the plaintiff was a pretext for the actual reason, a discriminatory one. Nestor had to prove that the reason for her termination given by Pratt was "unworthy of credence." Reeves v.Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2106,147 L.Ed.2d 105 (2000), quoting Texas Department of Community Affairs v.Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981);McDonnell Douglas Corp. v. Green, supra, 805; Ann Howard's Apricot'sRestaurant v. CHRO, supra, 226.
The hearing officer concluded, and the plaintiff contests as its second ground of appeal, that Nestor had proved that the reason given for her termination was not the "real reason." The hearing officer identified three items among the evidence produced by Nestor to support his finding of pretext. The first was that Pratt's rules against fighting were selectively enforced. As a matter of law, there is ground to find pretext in sanctioning a similarly-situated employee who committed a similar offense much less leniently. Stalter v. Wal-Mart Stores, Inc.,195 F.3d 285, 290 (7th Cir. 1999) (black fired for violating work rules, while white only counseled); Cunliffe v. Sikorsky Aircraft Corp.,9 F. Sup.2d 125, 131 (D.Conn. 1998) (plaintiff alleges pretext in the discriminatory enforcement of the company's sexual harassment policy; see also McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 283,96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) ("[T]his criterion must be `applied alike to members of all races,' and Title VII is violated if, as petitioners allege, it was not.")
Here, the record reveals that both Nestor and Elmore were similarly-situated and equally at fault in the incident. Elmore's penalty for his behavior was a one-day suspension without pay, (ROR, Volume 6, Item 92, p. 924), while Nestor was terminated. There is thus substantial evidence to support the hearing officer's determination that the severe sanction of termination was unevenly applied to Nestor and that the reason given by the plaintiff was pretexual.
Second, the hearing officer found that the plaintiff's internal security investigator who took statements and wrote a report subsequent to the time clock incident knowingly took inaccurate statements. (ROR, Volume 1, Item 1, p. 29.) The development of a false or flawed CT Page 2561 investigative report would support a finding of pretext. Williams v.Trans World Airlines, Inc., 660 F.2d 1267, 1272 (8th Cir. 1981); Lenihanv. City of New York, 636 F. Sup. 998, 1009-10 (S.D.N.Y. 1985).
Here, the record shows that the investigator interpreted what witnesses told him about the incident and wrote investigative statements in his own words. When Nestor tried to change his use of the term "body jamming" in her statement, the investigator refused, stating that "they'll understand." (ROR, Volume 5, Item 91, p. 677.) When another eye witness tried to change his statement relating to Nestor's conduct at the time clock from "kicking" to leaning against Elmore's thigh, the investigator refused, saying that "that's alright." (ROR, Volume 7, Item 94, p. 1131.) There is evidence of record to support a finding of pretext on this ground.
The hearing officer also concluded that Berr, the supervisor who terminated Nestor, had acted on incomplete information from Burns, Nestor's immediate supervisor. (ROR, Volume 1, Item 1, pp. 24, 28.) When a supervisor defectively summarizes an incident to the officials considering termination, pretext may be found. Kientzy v. McDonnellDouglas Corp., 990 F.2d 1051, 1060 (8th Cir. 1993) (conduit for prejudice); Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316,1325 (8th Cir. 1994) (investigation set up to fail).
The record shows that Burns had knowledge of the history between Nestor and Elmore. (ROR, Volume 5, Item 91, pp. 641, 651.) He did not disclose these prior incidents to Berr during their discussion of the remedy for the time clock incident. (ROR, Volume 6, Item 92, p. 956.) Indeed, he did not offer any justification for Nestor's actions. (ROR, Volume 6, Item 92, p. 925.) Nestor told Burns that she was trying to defend herself and also mentioned her view that this was sexual harassment in the workplace. This was not communicated to Berr. (ROR, Volume 6, Item 92, p. 922.) The record thus supports the hearing officer's finding of pretext.[4]
The fact that Berr or Pratt itself had no discriminatory motive in firing Nestor is irrelevant. The hearing officer found that Berr's ultimate decision had been tainted by the mistakes made by Burns. (ROR, Volume 1, Item 1, p. 28.) The cases hold that errors made at an initial level of supervision cannot be insulated by later supervisory review.Jiles v. Ingram, 944 F.2d 409, 413-14 (8th Cir. 1991); Kientzy v.McDonnell Douglas Corp., supra, 990 F.2d 1057 (lower level flaws taint final decision).
Since the finding of pretext is supported by substantial evidence, the court may defer to the hearing officer's conclusion[5] that Nestor met CT Page 2562 her burden of proof that there was gender discrimination. "Thus, a plaintiffs prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reevesv. Sanderson Plumbing Products, Inc., supra, 120 S.Ct. 2109.[6]
The plaintiffs final argument challenges the hearing officer's decision to accept evidence about Nestor's harassment complaints against Elmore that had occurred up to November 1990, about 1.5 years before the time clock incident. While it is true that these incidents could not timely form the basis of a CHRO complaint, the hearing officer decided to admit the incidents to show the atmosphere of lingering hostility between Nestor and Elmore. (ROR, Volume 6, Item 92, p. 944.) See Lenihan v. Cityof New York, supra, 636 F. Sup. 1010; Heyne v. Caruso, 69 F.3d 1475,1480 (9th Cir. 1995); Larson v. Harrington, 11 F. Sup.2d 1198, 1201
(E.D.Cal. 1998).
The plaintiff argues that the prior incidents occurred too remote in time to be accepted into evidence. This decision of the hearing officer must be judged under an abuse of discretion standard. Ann Howard'sApricot's Restaurant v. CHRO, supra, 237 Conn. 222; Griffin v. Muzio,10 Conn. App. 90, 93, cert. denied, 203 Conn. 805 (1987). The court concludes that the decision that this evidence was timely and probative was not an abuse of this discretion by the hearing officer. Brillhart v.Philips Elec. North America Corp., 938 F. Sup. 742, 747 (D.N.M. 1996).
Therefore, the plaintiffs appeal is dismissed.
Henry S. Cohn, Judge